STATE of Utah, Plaintiff and
Respondent,

v.

Anthony G. BARBER, Defendant
and Appellant.

No. 860217–CA.

Court of Appeals of Utah.

Dec. 22, 1987.

Lisa J. Remal, Joan C. Watt, Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

David L. Wilkinson, State Atty. Gen., Sandra L. Sjogren, Asst. Atty. Gen., for plaintiff and respondent.

Before ORME, JACKSON and GARFF, JJ.

## OPINION

JACKSON, Judge:

Defendant Anthony Gene Barber appeals his Third District Court jury conviction of retail theft, a second-degree felony in violation of Utah Code Ann. § 76–6–602(1) (1987). He seeks reversal or remand with instructions to reduce the conviction to one for simple theft, a class B misdemeanor. We affirm.

A security guard observed Barber and his sons, ages eight and ten, in the ZCMI department store. The guard's attention was attracted by a boxed Cabbage Patch doll carried by the younger boy. Barber carried a brown store bag with "Wolfe's" printed on it. The boys separated from Barber and returned with a large white bag with "ZCMI" printed on it. Barber placed the doll box and the Wolfe's bag into the ZCMI bag and then handed the bag to the younger boy. The two boys again left their father. Upon their return a short time later, all three stepped onto the escalator, where a store employee, Hansen, heard Barber tell his sons to take what they had and hide or "ditch" it in the toy department. The three separated again. Hansen went to the toy department and saw the younger Barber boy with the ZCMI bag. She enlisted Hutchinson, husband of another employee, to follow him. This boy went

from the toy department out to the parking terrace and crouched behind a car. Hutchinson approached and told him they should return to the store, at which point the youngster exclaimed, "I didn't want to do this. My dad made me do this."

In the meantime, the ten-year-old, under the guard's scrutiny, rejoined Barber and started to leave the store. Security guards stopped them just as Hutchinson and the younger boy returned to the store. All assembled in the store's security office. The younger boy reported that a video recorder had been hidden in the toy department. He led the security guards there, crawled under a display, and retrieved the recorder. He also reported that a ZCMI video camera was in his father's car. Barber surrendered his car keys, and the video camera was found on the front passenger seat in a brown Wolfe's bag. The camera and recorder were priced and sold as a unit at $1,849.00.[1]

On appeal, Barber avers that: (1) the court erred in admitting his son's statements; (2) the evidence was insufficient to support his retail theft conviction; and (3) the evidence was insufficient to prove that the value of the items stolen exceeded $1,000, constituting a second-degree felony.

## ADMISSION OF SON'S STATEMENTS

Hutchinson testified that the eight-year-old boy said, "I didn't want to do this. My Dad made me do this." Barber objected to admission of those statements as inadmissible hearsay. The trial court admitted them as admissions of an agent of the defendant, pursuant to Utah R.Evid. 801(d)(2)(D): "A statement is not hearsay if ... [it] is offered against a party and is ... a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship...."

■ Barber argues that his child was not his agent, but if he was, the statements were not within the scope of his agency or made during the existence of the relationship. We need not rule on the agency question because we think the child's statements fit more clearly within the "excited utterance" exception in Utah R.Evid. 803(2): [2]

The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(2) **Excited utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

This exception may be applied only if each of three conditions is met: (1) a startling event or condition occurred; (2) the statement was made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement relates to the startling event or condition. *United States v. Moore,* 791 F.2d 566, 570 (7th Cir.1986) (interpreting Fed.R. Evid. 803(2), identical to Utah R.Evid. 803(2)). *See David ex rel. Berkeley v. Pueblo Supermarket,* 740 F.2d 230, 235 (3d Cir.1984).

■ It is evident that the Barber boy's statements fulfill all three requirements.[3] When followed from the store, carrying an item he had not paid for, this young child attempted to hide behind a car. It was undoubtedly startling when Hutchinson approached and told him he should return to the store. Caught red-handed with the stolen doll, he suddenly knew the jig was up. His immediate utterance revealed the extreme stress of the situation, including the

---

**1.** Under Utah Code Ann. § 76–6–412(1)(a)(i) (1978), this theft was classified as a second-degree felony because the value of the unit exceeded $1,000.00. See note 4, *infra.*

**2.** We may affirm the decision to admit the statements on any proper ground, even though the court assigned another basis for its ruling. *State v. Gray,* 717 P.2d 1313, 1316 (Utah 1986).

**3.** "These conditions on the admission of hearsay seem to ensure a level of trustworthiness such that the testimony is likely to enhance the truth-seeking function of litigation." *United States v. Downing,* 753 F.2d 1224, 1237 n. 15 (3d Cir. 1985).

pangs of a guilty conscience. Hutchinson surprised him in the act of wrongdoing. He was under the exciting influence of that event to the extent that his spontaneous statements were not likely the result of fabrication, intervening actions, or the exercise of choice or judgment. *See State v. Kaytso,* 684 P.2d 63, 64 (Utah 1984) (decided under the prior Utah rule). Finally, the boy's statements directly concerned his apprehension by Hutchinson and the reason for it. They were, therefore, properly admitted at trial as not excluded by the hearsay rule.

## SUFFICIENCY OF THEFT EVIDENCE

■ On a claim of insufficient evidence, we review the evidence and the inferences drawn therefrom in the light most favorable to the jury verdict. *State v. Nickles,* 728 P.2d 123, 125 (Utah 1986). "So long as there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made, our inquiry stops." *State v. Booker,* 709 P.2d 342, 345 (Utah 1985). *Accord State v. Underwood,* 737 P.2d 995, 996 (Utah 1987).

Under section 76–6–602(1), a person commits the offense of retail theft when he knowingly

> [t]akes possession of, conceals, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the retail value of such merchandise[.]

Barber claims innocence by pointing his accusing finger at his sons—one of them was the thief, and he was not aware of the

criminal activity. But, from the evidence described, the jury could reasonably believe that Barber instigated the entire episode. Young children who are stealing without their father's knowledge would not normally place their stolen goods on the front seat of father's car. Who had the keys to the car? Father. Who had been holding the Wolfe's bag? Father. From the evidence, the jury could reasonably conclude that father caused the video camera to be carried away to his car and caused the video recorder to be moved to the toy department. The conscience-stricken eight-year-old exclaimed that his father was the real culprit. The jury could reasonably believe the boy's revelation was true and not contrived on the spur of the moment. Moreover, Barber's intent to retain the wares or permanently deprive ZCMI of them could be reasonably inferred from the evidence without any stretch of the imagination. We find the evidence more than sufficient to convict him.

## EVIDENCE OF $1,000.00 VALUE

■ Barber argues that, at most, the evidence connected him only to the theft of the Cabbage Patch doll valued at $36.00, which is the total value that should be considered in classifying the theft. He reasons that the video recorder was in the store at the time of his apprehension, so there was no evidence of intent to permanently deprive the store of the recorder. At best, he asserts, his activity amounted only to an attempted theft of the recorder. Further, he claims that the video camera's value can't be used to classify this theft because it was valued by a witness at $1,849.00 *with* the recorder as part of a unit, and not separately. To convict of a second-degree felony, the value of the stolen property must exceed $1,000.00.[4] Barber concludes that he should have been

---

**4.** Section 76–6–412 provides in pertinent part:
(1) Theft of property and services as provided in this chapter shall be punishable as follows:
(a) As a felony of the second degree if:
(i) The value of the property or services exceeds $1,000; or
. . . .
(b) As a felony of the third degree if:

(i) The value of the property or services is more than $250 but not more than $1,000; or
. . . .
(c) As a class A misdemeanor if the value of the property stolen was more than $100 but does not exceed $250.
(d) As a class B misdemeanor if the value of the property stolen was $100 or less.

sentenced for a class B misdemeanor, under section 76–6–412(1)(d), because the doll's value was under $100.00.

Barber views the evidence with a jaundiced eye. We see evidence connecting him with the theft of each item—as did his unanimous jury. Barber placed the Cabbage Patch doll in the ZCMI bag, and his son walked out of the store with it. Barber held a brown Wolfe's bag containing some unseen object. That bag was placed by him into the ZCMI bag. Later, an identical Wolfe's bag was found on the front seat of his locked car to which Barber had the keys. The bag contained the stolen video camera. Barber told his sons to "ditch" something in the toy department. Later, his eight-year-old son crawled under a display and retrieved the stolen recorder.

On the issue of his intent, Barber chooses to ignore that, under our statute, theft is committed by taking possession, concealing, transferring or causing to be carried away or transferred, any merchandise. The fact that the recorder was not "carried away" out of the store makes no difference. There is ample evidence to support the conclusion that Barber directed the taking and hiding of the recorder—acts sufficient to constitute concealment or transfer under the statute—with the intent to permanently deprive ZCMI of it. Moreover, the camera and recorder operated only as a unit, so each piece would have only minimal value to ZCMI by itself. According to the testimony at trial, neither could be utilized without the other, a fact an adult would probably know, but an eight or ten-year-old would probably not. Clearly, the jury chose to reject Barber's attempt to shift accountability to his sons and devalue the goods. There is ample evidence to support the jury's conviction of Barber for theft of the doll, the camera and the recorder.

Affirmed.

GARFF and ORME, JJ., concur.