**STATE of Utah, Plaintiff and Appellee,**

v.

**Gordon Dee MICKELSON, Defendant and Appellant.**

No. 910455–CA.

Court of Appeals of Utah.

Dec. 31, 1992.

Jackson, J., concurred and filed opinion.

Lisa J. Remal and Elizabeth Holbrook (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., and Kris C. Leonard (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

■ Appellant assails his conviction for forcible sexual abuse, a second degree felony in violation of Utah Code Ann. § 76–5–404 (1990), on two grounds. First, he claims the trial court improperly characterized statements made by the victim as "excited utterances," admissible under Utah Rule of Evidence 803(2). Second, he challenges the trial court's refusal to order the prosecution to disclose to the defense any criminal records of witnesses the State planned to call at trial, absent a good cause showing that particular witnesses may have had criminal histories.[1] We affirm in part, reverse in part, and remand with instructions.

## BACKGROUND

Except as otherwise noted, we recite the facts in the light most favorable to the jury's verdict. *See, e.g., Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 794 (Utah 1991).

On the morning of November 6, 1990, appellant Gordon Dee Mickelson was working as an orderly at South Valley Care Center in Jordan, Utah, under the supervision of Kristi Schugk, a nurse's aid. Sometime between 2:00 and 3:00 a.m., Schugk reported to the room of a seventy-two year old resident, who will be referred to as W.M. W.M., who suffered from senile dementia, organic brain disease, hypertensive cardiovascular disease, incontinence, and a history of strokes and chronic urinary tract infections, was unable to walk or care for herself, and requested Schugk's assistance in going to the bathroom. Schugk enlisted appellant's aid, and the two assisted W.M. from her bed to the bathroom and back. As Schugk and appellant were returning W.M. to her bed, a patient in the next room signaled for assistance. Schugk left appellant to finish with W.M. while she went to answer the call.

Dewey Cannon, the Center's maintenance supervisor, was applying new wax to the hallway floor outside W.M.'s room when Schugk and appellant entered the room and assisted W.M. to the bathroom. Cannon suspended his work while Schugk and appellant were inside the room, and waited outside the open door for them to leave before continuing. Cannon testified at trial that he delayed application of the new wax until Schugk and Mickelson left W.M.'s room because of the danger that, if the two stepped from W.M.'s room onto a

---

1. Appellant also raises a third argument, claiming the trial court violated his right to equal protection of the law by refusing to reduce the felony forcible sexual abuse charge to a misdemeanor charge of gross lewdness. Utah Code Ann. § 76–5–404 (1990), which defines the offense of forcible sexual abuse, requires the accused to have acted with specific intent to cause pain or evoke sexual gratification. Utah Code Ann. § 76–9–702 (1990), which codifies the misdemeanor charge of gross lewdness, requires only that the accused have knowingly or recklessly acted in a manner "likely to cause affront or alarm to the person touched." Since § 76–9–702 includes a less culpable mental state than

does § 76–5–404, and does not require the accused to have acted to satisfy any particular desire, it is clear that § 76–9–702 encompasses a lesser degree of conduct than § 76–5–404. Thus, we summarily affirm the trial court's characterization of gross lewdness as a lesser included offense of the crime of forcible sexual abuse, and the court's denial of appellant's motion to reduce the charge against him from the second-degree felony to the misdemeanor. *Cf. State v. Vogt*, 824 P.2d 455, 459 (Utah App.1991) ("the sexual abuse of a child statute ... and the lewdness involving a child statute ... proscribe different acts").

slick, newly waxed floor, they might slip and fall. When Schugk left W.M.'s room to respond to the second assistance call, Cannon continued to wait for appellant to exit. When appellant did not exit, Cannon looked into the room through the open doorway.

Cannon testified at trial that, upon looking in W.M.'s room, he observed W.M. lying on her back in bed, her nightgown pulled up around her waist, and appellant standing beside the bed fondling her exposed genitalia with one hand. Cannon stated that, after observing this activity for several minutes, he rushed into the room and yelled at appellant, at which time appellant pulled the bed covers over W.M. and left the room.[2]

At approximately 5:00 that same morning, two to three hours after the molestation occurred, Schugk entered W.M.'s room to wake and dress her. Schugk found W.M. in an emotionally distraught state, and asked W.M. what was wrong. W.M. responded: "That man was mean to me." Schugk asked W.M. which man she meant, and W.M. said, "The man that was with you, the dark-haired man." Appellant was the only dark-haired man who had accompanied Schugk into W.M.'s room that morning. Schugk attempted to garner more information from W.M. concerning the cause of her anxiety, but was unable to calm W.M. enough to do so.

At 7:00 a.m., another nurse at the Center, Juanita Nutt, entered W.M.'s room to take her to the dining room for breakfast. At that time W.M., who was still visibly upset, told Nutt she did not want to go. Nutt asked W.M. why, and W.M. responded, "I am hurt." Nutt was unable to extract any other information from W.M. concerning the nature or cause of her "hurt."

## COURSE OF PROCEEDINGS

Appellant was tried on the charge of forcible sexual abuse. Prior to trial, appellant moved that the State prepare and produce to the defense "a list of prior criminal convictions of witnesses the State intends to call." The motion did not identify any particular witnesses for whom criminal records were requested, or explain why the records were sought. Thus, it clearly was not an attempt to gain possession of specific records the defense already knew to exist. Rather, it constituted a bid by the defense to discover which, if any, of the State's witnesses had prior criminal convictions which could be used for impeachment purposes.[3]

The prosecution objected to the motion on the ground that, under Utah Rule of Criminal Procedure 16(a)(5), appellant was obligated to demonstrate a "good cause" basis for believing that a particular witness may have had a criminal history before being granted access to that witness's record. Since the defense's motion failed to make this showing with regard to any of the State's witnesses, the prosecution asserted, appellant's motion was no more than a "fishing expedition" and should be denied.

The trial court agreed with the prosecution, and suggested that appellant supplement the motion by identifying with particularity those witnesses for whom convic-

---

**2.** Cannon's testimony was not without its weaknesses. While, at trial, Cannon claimed the molestation had occurred over a period of two to four minutes, he testified at the preliminary hearing that he had observed the molestation over a period of one to two minutes, and told an investigating police officer that the molestation had occurred for four to six minutes. In a written statement made five days after the alleged event, Cannon claimed the molestation had occurred for ten to fifteen minutes. No explanation appears as to why Cannon would permit such molestation to go on for so long uninterrupted. Other factors, including the absence of any medical evidence indicating W.M. was sexually abused, Cannon's delay in report-

ing the event, and the fact that portions of Cannon's testimony were contradicted by Schugk and other Center employees, also suggest that Cannon's testimony was less than optimally credible. Nonetheless, the jury apparently chose to accept Cannon's version of events, and no challenge to the sufficiency of the evidence supporting the verdict has been raised on appeal.

**3.** It appears clear from the record that, since Mr. Cannon was by far the most important of all the State's witnesses, the defense was most concerned with impeaching his testimony.

tion records were sought, and setting forth a statement for each identified witness establishing good cause why the defense believed that witness might have a criminal history. The court stated it would grant appellant's motion, and order the prosecution to disclose the requested records, with respect to any witnesses for whom this supplementary information was provided. Appellant failed to supplement its motion with regard to any of the witnesses, however, and was thus denied access to any of the requested criminal records which might exist.

At trial, Schugk and Nutt testified as to the statements W.M. made to them on the morning of November 6, 1990, concerning W.M.'s being "hurt" and her perception that a dark-haired man had been mean to her. Defense counsel objected to the testimony on the ground that, since W.M.'s statements had been made out of court, Schugk and Nutt's testimony constituted inadmissible hearsay. The trial court, however, rejected the defense's position, and held that the statements were admissible as "excited utterances" under Utah Rule of Evidence 803(2).

Appellant was convicted of forcible sexual abuse and sentenced to one to fifteen years in prison, fined $10,000, and ordered to pay restitution in an undetermined amount. Appellant now challenges his conviction, claiming the trial court erred in (1) determining W.M.'s out-of-court statements to be admissible as excited utterances, and (2) requiring defendant to make a showing that particular witnesses may have had criminal histories as a prerequisite to ordering disclosure of the conviction records of the State's witnesses.

## ADMISSIBILITY OF W.M.'S STATEMENTS

Hearsay statements are generally excluded as evidence on the ground that, since the statements are not made under oath, and often only the witness to the declaration—not the declarant—is available

4. In the instant case, W.M. testified at trial but did not recall the statements she had made to

for cross-examination at trial, the statements are generally unreliable. Utah R.Evid. 802; *State v. Cude*, 784 P.2d 1197, 1199 (Utah 1989). However, Utah Rule of Evidence 803(2) exempts from Rule 802's prohibition "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," regardless of whether the declarant is available to testify at trial.[4] Such statements, called "excited utterances," are admissible on the ground that, since they are made at a time when the declarant is under the influence of a startling event and therefore unlikely to have the wherewithal to fabricate falsehoods, "the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous." *Idaho v. Wright*, 497 U.S. 805, 819, 110 S.Ct. 3139, 3149, 111 L.Ed.2d 638 (1990). *See* Edward W. Cleary, McCormick on Evidence, § 297 at 855 (3d ed. 1984).

The Utah Supreme Court has recognized a three-pronged test for determining whether a statement is admissible under Rule 803(2). According to this test, a statement constitutes an excited utterance only when (1) a startling event or condition occurred; (2) the statement was made while the declarant was under the stress of excitement caused by the event or condition, and (3) the statement relates to the startling event or condition. *Cude*, 784 P.2d at 1200. *See also State v. Barber*, 747 P.2d 436, 438 (Utah App.1987). Absent one or more of these criteria, the statement may not be admitted as an excited utterance.

### I. Occurrence of Startling Event

Appellant first argues the trial court erred in finding appellant's conduct toward W.M. satisfied the first prong of *Cude*—that a startling event or condition had occurred. He claims that since, at the time W.M.'s statements were admitted at trial, it was unresolved whether W.M. had

Schugk and Nutt.

been sexually abused, the trial court could not have properly determined that W.M. had suffered the predicate "startling event," to which her statements supposedly relate. Appellant asserts that the court erred in admitting W.M.'s hearsay statements to establish the occurrence of the very event which supposedly prompted the statements.

The admissibility of evidence is a question of law. *State v. Ramirez,* 817 P.2d 774, 781 n. 3 (Utah 1991). Accordingly, we generally grant no deference to a trial court's decision on that issue, but review it for correctness. *Id.* However, as the court observed in *Ramirez,* it is not at all unusual for the applicable legal standard of admissibility to vest a measure of discretion in the trial court, by making the court's legal analysis contingent upon the resolution of certain predicate factual is-

sues.[5] *Id.* When this is the case, our "correctness" standard of review necessarily incorporates a "clearly erroneous" standard for review of these subsidiary factual determinations. *Id.*

In the instant case, the ultimate inquiry before the trial court—whether W.M.'s statements constituted excited utterances, such that they were exempt from Rule 802's proscription against hearsay—was clearly a question of law. However, in order to answer that question, the trial court was first required to weigh conflicting testimony and ascertain whether, as a factual matter, the requisite startling event had occurred. The court's finding on this issue thus constitutes a subsidiary factual determination and is reviewed under the deferential "clearly erroneous" standard.[6]

Evidence adduced at trial—both in the form of W.M.'s statements[7] and Cannon's

5. For instance, under Utah Rule of Evidence 407,
   > [w]hen, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require exclusion of evidence of subsequent measures when offered for another purpose....

   While the rule sets forth a legal standard of admissibility, it necessarily reserves for the trial court's determination certain subsidiary factual matters, i.e., whether subsequent measures were taken, whether those measures would have made the event less likely to occur, etc. *See also Ramirez,* 817 P.2d at 778–79 (discussing existence of subsidiary factual determinations in context of Utah R.Evid. 403).

6. The focus at trial appears to have been whether appellant had sexually abused W.M., as Cannon claimed, or whether he had done nothing more than straighten the sheets underneath her after returning her to bed, as appellant testified. Appellant never claimed he was not with W.M. when Cannon looked in the room, or otherwise raised an argument based on identity. Thus, the trial court's finding that the molestation had indeed occurred might be viewed as improperly removing the decisive factual determination from the province of the jury. In reality, that was not the case. The court's finding was made solely for the subsidiary purpose of determining whether to admit W.M.'s statements; it was not disclosed to the jury, nor did it directly influence the jury's deliberations on the issue of whether sexual abuse had occurred, other than by permitting the jury to hear W.M.'s state-

ments. The ultimate factual issue—whether the evidence showed that appellant's conduct toward W.M. constituted forcible sexual abuse, such that a conviction was warranted—was properly reserved for the jury's plenary consideration. *See generally Ramirez,* 774 P.2d at 778 (distinguishing judge's role as arbiter of admissibility from jury's role as ultimate finder of fact).

7. We note that, "under generally prevailing practice, the [hearsay] statement itself is taken as sufficient proof of the exciting event and therefore the statement is admissible despite absence of other proof that an exciting event occurred." Edward W. Cleary, *McCormick on Evidence,* § 297 at 855 (3d ed. 1984). Thus, a majority of courts would apparently have accepted W.M.'s statements, without more, as adequate evidence that a startling event had occurred. Judge Weinstein has explained the reasoning behind this approach as follows:

   > Such an approach though somewhat unsettling theoretically as an example of a statement lifting itself into admissibility by its own bootstraps, is justified by the last sentence of Rule [of Evidence] 104(a) which provides that in making preliminary determinations the judge "is not bound by the rules of evidence except those with respect to privileges." A hearsay declaration may be used to establish the foundation for a hearsay exception. Any other approach would greatly undermine the utility of the exception by causing valuable evidence to be excluded.

   Jack B. Weinstein & Margaret A. Berger, 4 *Weinstein's Evidence,* ¶ 803(2)[01] (1991). Although we recognize the policies underlying the

testimony—supported the court's finding that a startling event had occurred, notwithstanding appellant's testimony that the event did not occur. Accordingly, the subsidiary factual determination was not clearly erroneous given the evidence presented, and we uphold the court's determination that the first prong of *Cude* was satisfied.

## II. Timing of Statement Made Under Stress or Excitement

■ Appellant next claims that the State failed to satisfy the second prong of *Cude*—that W.M.'s statements were made while she was under the stress of the startling event—because the statements were not made until several hours after the event had occurred. *See State v. Cude*, 784 P.2d 1197, 1200 (Utah 1989). Appellant maintains that when a significant period of time separates the occurrence of a startling event from the utterance of a statement describing or otherwise relating to that event, a court should be unwilling to view the statement as an excited utterance for purposes of Rule 803(2). Appellant cites several cases in support of this proposition, and we recognize that, at least as a general proposition, "as the time between the event and the statement increases, so does the reluctance to find the statement an excited utterance." McCormick, § 297 at 856. *See also Cude*, 784 P.2d at 1197 ("[g]enerally, the shorter the gap between the startling event and the utterance, the more reliable the statement").

■ However, while the passage of time is one measure of whether a statement is the product of a startling occurrence, it is not the most reliable one. *Cude*, 784 P.2d at 1200. "The more accurate gauge—and the more difficult to read—is the state of the declarant's mind." *Id.* In certain situations, the stress of an event may affect the declarant's mind long after the event itself has transpired. In recognition of this fact, courts have generally been willing to characterize statements as products of exciting occurrences despite a significant lapse in time between the event and the statement, so long as adequate evidence suggests the declarant was still under the stress of the event at the time the statement was made. McCormick explains the proper interplay between the time and thought components in this way:

> Perhaps the accurate rule of thumb might be that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process.

McCormick, § 297 at 856. Thus, even when the interval between the event and the statement supports a presumption that the statement was not an excited utterance, that presumption may be rebutted by evidence showing the declarant did not engage in reflective thought before making the statement.

Evidence that there was a reasonable basis for the declarant's continuing emotional distress, or that the declarant was actually nervous or distraught at the time the statement was made, has generally been accepted as adequate to rebut the presumption against an excited utterance. *See, e.g., Webb v. Lane*, 922 F.2d 390, 394–95 (7th Cir.1991) (statements made several hours after shooting were excited utterances, since declarant was still in extreme pain and shock after being shot); *United States v. Scarpa*, 913 F.2d 993, 1017 (2d Cir.1990) (lapse of five or six hours between beating and statement not dispositive when victim was still very nervous); *State v. Anaya*, 165 Ariz. 535, 799 P.2d 876, 881 (1990);

majority approach, we are nonetheless somewhat troubled by the approach's circular and self-fulfilling "bootstrapping." To ensure that "valuable evidence" is not excluded at trial, the majority approach appears to downplay the characteristic that makes certain hearsay statements "valuable evidence"—the probability that

they are the result of startling events, and are therefore inherently reliable. However, since, in the instant case, W.M.'s statements do not constitute the sole evidence that a startling event occurred, we need not consider whether Utah should depart from the "generally prevailing practice" with regard to this issue.

*People v. Sandoval,* 709 P.2d 90, 92 (Colo. App.1985).

We recognize that, on the morning in question, appellant left W.M.'s room some two to three hours before W.M. spoke to Schugk, and some four to five hours before W.M. spoke to Nutt. Such lengthy time delays certainly support a presumption that, at the time the statements were made, W.M. was no longer under the "stress of excitement caused by the event or condition." Utah R.Evid. 803(2). Under the specific facts of this case, however, we believe the State introduced adequate evidence to rebut that presumption. Both Schugk and Nutt testified that, at the time W.M. spoke to them, she was visibly upset and nervous, and had been crying—evidence that, despite sufficient time for reflective thought, W.M.'s statements were nonetheless the result of the stress of the startling event. Further, undisputed medical testimony presented at trial established that W.M. is not a likely candidate for fabrication when given the opportunity.[8] The court could have reasonably exercised its discretion to infer from this testimony that W.M. was not able to engage in reflective thought, even given abundant time, culminating in inaccurate or untruthful statements.

Given the evidence adduced at trial, we believe the presumption was adequately rebutted in this case. Accordingly, we conclude the trial court did not abuse its discretion in finding the second prong of *Cude*—that W.M.'s statements were the product of the stress caused by the event—satisfied, despite the significant time interval between the occurrence of the event and the statements. *See Ramirez,* 817 P.2d at 781 n. 3.

## III. Declarant's Mental Condition As Bar to Statement's Admission

■ In his final challenge to the admissibility of W.M.'s statements, appellant asserts that W.M.'s mental impairments rendered her statements so unreliable that they cannot be used to satisfy the second or third prongs of *Cude.* Specifically, appellant argues that, as a result of W.M.'s failing mental health, the trial court had no way to accurately determine whether W.M.'s statements to Schugk and Nutt were actually caused by, and related to, appellant's conduct on the morning in question, or whether they were partially or wholly the product of W.M.'s imagination or flawed memory of other events. Thus, appellant concludes, the court erred in accepting W.M.'s statements as evidence satisfying *Cude*'s second or third prongs.

■ We agree with appellant that, insofar as *Cude* requires both a causal link between an event and a subsequent statement, and a descriptive link between the statement and the earlier event, the declarant's mental capacity is relevant to the court's decision whether to admit the statement as an excited utterance.[9] However, it is the burden of the party objecting to the statement's admission to preserve the issue for appeal, by objecting or making timely motion at trial and stating the specific ground of objection. *See* Utah R.Evid. 103(a)(1); *State v. Eldredge,* 773 P.2d 29, 34–35 (Utah), *cert. denied,* 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989).

■ In the instant case, we find no indication in the record that this burden was met. At the time the trial court ruled on the admissibility of W.M.'s statements, appellant did not advance W.M.'s mental incapacity as a ground for excluding her

---

**8.** W.M. suffered from debilitating mental handicaps, and as a result was unable to make virtually any decisions for herself. Nutt testified that W.M. was often confused by her surroundings, "such that she is confused to the time and place where she is at." Appellant states in his brief that "W.M.'s powers of perception, assimilation, recall, and communication were impaired by her numerous medical problems."

**9.** For instance, if a mentally unstable declarant had a history of vivid hallucinations concerning overweight men, the court might find the statement, "the fat man hurt me," inadmissible as an excited utterance, while permitting from the same declarant, "the dark-haired man who was with you earlier hurt me." *See generally* Annotation, *Admissibility of Testimony Regarding Spontaneous Declarations Made by One Incom-*

statements.[10] Indeed, according to the record before us, appellant failed to introduce any evidence at trial that would have supported such an argument.[11] Thus, appellant failed to raise at trial the specific issue he asks us to consider here, and for that reason we will not consider it. *See Eldredge,* 773 P.2d at 35 (in challenge before trial court to admissibility of victim's statements, appellant raised only the issue of victim's competency and was therefore precluded from raising issue of victim's reliability on appeal).

We reject appellant's challenge to the admissibility of W.M.'s statements, and affirm the trial court's admission of the statements as excited utterances under Utah R.Evid. 803(2).

### APPELLANT'S REQUEST FOR CONVICTION RECORDS OF STATE'S WITNESSES

■ Utah Rule of Criminal Procedure 16(a) governs discovery in criminal cases, and states:

(a) Except as otherwise provided, the prosecutor shall disclose to the defendant upon request the following material or information of which he has knowledge:

(1) relevant written or recorded statements of the defendant or codefendants;

(2) the criminal record of the defendant;

(3) physical evidence seized from the defendant or co-defendant;

(4) evidence known to the prosecutor that tends to negate the guilt of the accused, mitigate the guilt of the defendant, or mitigate the degree of the offense for reduced punishment; and

(5) any other item of evidence which the court determines on good cause shown should be made available to the defendant in order for the defendant to adequately prepare his defense.

A trial court is granted broad discretion to admit or deny discovery under this rule. *State v. Knill,* 656 P.2d 1026, 1027 (Utah 1982). However, we will not hesitate to find such an abuse, and reverse the lower court's ruling on the matter, when the court's decision is based on an erroneous interpretation of the Rule or any of its provisions. *Cf. Gaw v. State of Utah,* 798 P.2d 1130, 1134 (Utah App.), *cert. denied,* 145 Utah Adv.Rep. 38 (Utah 1990) (in context of admissibility of expert testimony, the trial court abuses its discretion when it relies on a misconception of the law).

In the instant case, the trial court based its decision to conditionally order the disclosure of State witness criminal records upon Rule 16(a)(5). The court stated:

The Court grants the motion for discovery on the production of rap sheets, or otherwise known as arrest records and conviction records of witnesses,[12] *providing that those witnesses on whom such information is desired be identified with particularity, and that a statement, setting forth good cause or reasonable grounds for the production of such information, be provided to the prosecution....* The Court certainly does not believe that every witness in this community should have a rap sheet run against him or her. *If the defense has a particular reason to believe that*

---

*petent to Testify at Trial,* 15 A.L.R. 4th 1043 (1982).

**10.** Appellant's sole objection to the statements' admission was that too much time had expired between the occurrence of the event and the utterance of the statements.

**11.** While the testimony of Schugk, Nutt, and a physician who had examined W.M. established that W.M. suffered from severe memory loss, no testimony was presented at trial concerning whether W.M. ever hallucinated, made statements about events that had not occurred, intermingled accounts of different events, or other-

wise possessed symptoms which could lead her to make a false account of an event she *did* remember.

**12.** We note that while the court discussed both arrest and conviction records, only *conviction* evidence is admissible for impeachment purposes. *See* Utah R.Evid. 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence."). Appellant's motion sought "a list of prior criminal convictions of witnesses the State intends to call."

*a witness or several witnesses have prior arrest records or convictions, then they must set forth in writing the basis for that belief, and meet the threshold requirements of good cause.*

Appellant now challenges this ruling, insofar as the court interpreted Rule 16(a)(5)'s "good cause" element to require defense counsel, as a prerequisite to gaining access to the conviction records of any State witnesses, to (1) identify particular witnesses for whom records are requested, and (2) set forth reasonable grounds for believing those witnesses had criminal histories. Appellant claims that since, in the instant case, the very records sought provided the only reasonable means by which the defense could learn whether any State witnesses had criminal histories, and thereby learn of any fertile ground for impeachment, these two conditions constituted an unreasonable bar to discovery.[13]

## I. One–Sided Access to Criminal Records

Certain types of criminal convictions may bear directly on the reliability of a witness, especially in the eyes of a lay jury. In recognition of this fact, Utah Rule of Evidence 609 provides that, to impeach the credibility of a witness, a party may use public records or the witness's admission to show that a witness has been convicted of crimes punishable by death or by imprisonment in excess of one year, or those involving dishonesty or false statement.[14] Rule 609 is written to allow both sides equal opportunity to reap the benefits of conviction evidence; thus, in a criminal case, the Rule permits both the prosecution and the defense to use criminal records for impeachment purposes. The premise underlying this approach is both simple and sound: if justice is to be served, the field on which litigants compete should be a level one. This is particularly true in criminal litigation, where the accused's fundamental liberty interest is at stake.[15] *See Wardius v. Oregon,* 412 U.S. 470, 475, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82 (1973) ("the State may not insist that trials be run as a 'search for truth' so far as defense witnesses are concerned, while maintaining 'poker game' secrecy for its own witnesses.")

However, insofar as a party's *use* of conviction records is contingent on that party's *access to* such records, Utah Code Ann. § 77–26–16(2)(a) effectively eliminates the neutral intent of Rule 609, by barring defense counsel from directly obtaining conviction records from the State Bureau

---

**13.** Appellant basically argues that the trial court's ruling created a "catch 22," premising access to the criminal records of specific witnesses on establishment of a "good cause" basis for believing those witnesses had engaged in prior criminal conduct, while denying him the only means of determining which State witnesses had engaged in such conduct. Thus, the prerequisite condition was unfulfillable absent discovery of the requested criminal records, and vice versa.

**14.** The Rule states, in relevant part:
(a) *General Rule.* For the purpose of attacking credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.
(b) *Time Limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date

of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date....
(c) *Effect of Pardon, annulment, or certificate of rehabilitation.* Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure....

**15.** Indeed, in our justice system, when the field is not level it is because it is purposely sloped in the defendant's favor. *See, e.g., Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481 (1895) (discussing development and purpose of presumption of innocence afforded criminal defendants); Charles E. Torcia, 3 *Wharton's Criminal Procedure,* § 391 at 3–4 (12th ed. 1975) (Fifth Amendment right against self-incrimination requires the government in its contest with the defendant to "shoulder the entire load"); Utah Rule of Professional Conduct 3.8 (imposing upon prosecutor, but not defense counsel, "special responsibilities" concerning disclosure of evidence, etc.).

of Criminal Identification. The Bureau, which maintains information relating to the identification and activities of persons who have been arrested or convicted of a criminal offense in Utah, constitutes the state's single most comprehensive storehouse of information. relating to criminal records. *See* Utah Code Ann. § 77–26–3 (1990). Prosecutors are routinely afforded access to this information by section 77–26–16(2)(a) (1990), which permits the Bureau to disseminate criminal history records to "criminal justice agencies for purposes of administration of criminal justice."

▮ Criminal defense attorneys, however, are not permitted access to Bureau files under section 77–26–16(2)(a), and often can only obtain disclosure of requested criminal records through Utah Rule of Criminal Procedure 16(a)(5).[16] As a result, the defense's ability to access conviction records of witnesses, and knowledgeably prepare impeachment strategies, is significantly impaired vis-a-vis that of the prosecution. While the prosecution can gain access to witnesses's criminal records directly from the Bureau, without any interference or review by the trial court, the defense is granted no such license. Instead, defense counsel is required to make a discovery motion before the trial court, requesting that the court order the prosecution to disclose certain records. Further, while the prosecution can usually procure any criminal records it desires, the defense's requests for disclosure under Rule 16(a)(5) must be accompanied by a showing of "good cause."

▮ Thus, while Rule 609 contemplates that both defense and prosecution will be afforded equal opportunity to employ conviction records as impeachment evidence, the practical effect of section 77–26–16(2)(a) is to give the State a distinct advantage in gaining access to potentially valuable impeachment evidence. *See Engstrom v. Superior Court,* 20 Cal.App.3d 240, 97 Cal.Rptr. 484, 487 (1971) (recognizing that "[u]nless criminal conviction records of prosecution witnesses are made available to the defense, the defendant would be at a great disadvantage").

## II. Definition of "Good Cause"

▮ In order to reduce the disparate treatment afforded prosecutors and defense attorneys under Utah law, and foster a more balanced application of Rule 609 in criminal cases, we believe Rule 16(a)(5)'s good cause requirement should be liberally interpreted within the confines of the requirement's purpose. In *Cannon v. Keller,* 692 P.2d 740 (Utah 1984), the Utah Supreme Court adopted just such a liberal definition when asked to determine whether a trial court had violated Rule 16(a)(5) by ordering disclosure of certain evidence— money seized from the defendant—to the defense on less than "good cause shown."

▮ The State contended that, contrary to the good cause requirement of the Rule, "the defendant failed to offer any evidence that disclosure was necessary for the preparation of the defense."[17] *Id.* at 743. The Court agreed that the defendant had not made a good cause showing. Nonetheless,

---

**16.** We recognize that under *Brady v. Maryland,* 373 U.S. 83, 86–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), and its progeny, the prosecution has an affirmative constitutional duty to disclose evidence that would tend to exculpate the accused. However, *Brady* is not of use when a defendant seeks access to nonexculpatory information, or when, as here, the law is unclear as to whether the information sought falls within the ambit of *Brady. See infra,* note 21. Further, while defendants may subpoena criminal records under Utah R.Crim.P. 14(b), "the [trial] court may quash or modify the subpoena if compliance would be unreasonable." *Id.* Since Utah Code Ann. § 77–26–16 does not provide for dissemination of criminal records directly from the Bureau of Criminal Identifica-

tion to defense counsel, a trial court could quash a defendant's attempt to subpoena records from the Bureau, on the ground that such records are statutorily protected from release. Thus, in situations such as the one before us now, discovery under Rule 16(a)(5) provides the only practical means by which a defendant may gain access to criminal records of prosecution witnesses.

**17.** Thus, the State itself read Rule 16(a)(5)'s language to mean that requested evidence must be disclosed to the defense upon a showing that the evidence was necessary "in order for the defendant to adequately prepare his defense." Utah R.Crim.P. 16(a)(5).

the Court upheld the trial court's discovery order on the ground that the prosecution itself had established good cause. The Court stated:

> [T]he State itself provided "good cause" by representing that it needed to keep defendant's money to use at trial, when the only logical use would of necessity entail proof of the details of the transaction in which the informant was involved.... [The trial court] acted well within [its] discretion in ordering the State to disclose evidence that it had itself suggested would be used to prove guilt.

*Id.* By recognizing the State's representations concerning the intended use of the evidence as establishing good cause, the *Cannon* Court implicitly held that (1) "good cause" requires only a showing that disclosure of requested evidence is necessary to the proper preparation of the defense and (2) such a showing is made whenever the trial court is apprised of the fact that the evidence is material to an issue to be raised at trial.

We believe the *Cannon* standard of good cause optimally balances the rights and obligations of parties in criminal litigation, and best harmonizes the somewhat conflicting policies underlying Rule 609 and section 77–26–16(2)(a). The standard allows a defendant ample access to evidence in the State's possession, by requiring, as the only prerequisite to discovery, that the court be apprised of the information's materiality to the case. Nonetheless, by requiring defendants to make this preliminary showing of materiality, *Cannon* also effectively protects the State and the court from irrelevant and vexing discovery requests. Thus, the trial can be conducted with a minimum of unnecessary delay, while still allowing both parties a maximum of necessary preparation.

■■■ Given the *Cannon* standard of "good cause," it is clear that Utah's Rule 16(a)(5) does not require some showing that a witness has engaged in prior criminal

conduct as a prerequisite to a defendant's discovery of criminal records. Instead, the Rule only requires that the defendant establish the materiality of the requested records to the case. *See also Engstrom,* 97 Cal.Rptr. at 487 (holding good cause requirement fulfilled when "defendant has disclosed his planned defense," such that "there is no reason to doubt the good faith of his request for discovery"). *But see United States v. Conder,* 423 F.2d 904, 910 (good cause requirement of federal discovery rule "is not satisfied by a mere conclusory allegation that the requested information is material to the preparation of the defense"), *cert. denied,* 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970). In the instant case, appellant stated at the motion hearing that "we request [the conviction records] simply because some prior convictions would be admissible in terms of impeachment of the credibility of the witness." This statement clearly sets forth the legitimate potential value of the requested evidence to the defense, and, therefore, establishes the materiality of the evidence to the issues to be raised at trial.[18] Thus, it is sufficient to satisfy Rule 16(a)(5)'s good cause requirement.

### III.   Identification of Requested Evidence

■■■ While *Cannon* establishes a rather liberal definition of "good cause" for purposes of Rule 16(a)(5), we do not believe that definition relieves defendant of the duty to identify the requested evidence with some specificity.

■■■ Having recognized the need for specificity, we believe appellant's request for discovery of "a list of prior criminal convictions of witnesses the State intends to call" adequately satisfies this burden in the instant case. The motion requested access to a select type of evidence, concerning a well-identified and relatively small group of individuals. As such, it did not constitute a "fishing expedition" requiring the trial court to make "good cause" determinations with respect to an unacceptably

---

**18.** For instance, in this case, where Mr. Cannon was the sole eyewitness to the alleged offense, there can be little doubt that any criminal records that could have been used to impeach Cannon's testimony under Rule 609 would have been material to the defense's case.

large pool of evidence. Accordingly, we hold that appellant adequately identified the requested evidence for purposes of Rule 16(a)(5).[19]

### IV. Determination of Prejudice to Appellant

■ A trial court's error warrants reversal "only if a review of the record persuades the [appellate] court that without the error there was 'a reasonable likelihood of a more favorable result for the defendant.'" *State v. Knight,* 734 P.2d 913, 919 (Utah 1987) (quoting *State v. Fontana,* 680 P.2d 1042, 1048 (Utah 1984)). While, in the instant case, we conclude the trial court misinterpreted the "good cause" provision of Rule 16(a)(5), we are unable to determine the harmfulness of that misinterpretation, as appellant has failed, albeit through no fault of his own, to identify any prejudice to his case as a result of the court's error. Further, the record before us fails to indicate (1) which, if any, of the State's witnesses actually had criminal records; (2) which of any existing criminal records the prosecution possessed or otherwise had knowledge of; (3) whether any of those records were admissible for impeachment purposes under the Utah Rules of Evidence; and (4) whether the testimony of

any impeachable witness was likely to have been instrumental to the jury's conviction.

■ In short, given the record before us, we are unable to determine whether criminal records exist which, if disclosed, may have had a significant impact upon the trial such that their nondisclosure constitutes prejudicial error. Ordinarily, this inability to determine prejudice would be fatal to appellant's case, and would result in affirmance of the conviction. *Id.* at 919. However, as previously noted, appellant asserts that his inability to show prejudice does not stem from his failure to adequately investigate the case, but rather from the fact that criminal records provided the only means of determining whether any State witnesses had criminal pasts.[20] Because we recognize the merit of appellant's argument on this point, and because no showing has been made that alternative reasonable means existed by which the defense could have investigated the criminal histories of State witnesses in this case, we will not extinguish appellant's claim despite his inability to show harmful error. Instead, we remand to the trial court for a determination as to whether the prosecution possessed or otherwise had knowledge of any conviction records of State witnesses,[21]

---

**19.** We recognize that appellant's request was not as narrowly tailored as it could have been in this case. Since the verdict hinged on the testimony of only a few key witnesses, it appears appellant's trial preparation would not have been jeopardized had his motion set forth the names of particular State witnesses for whom records were requested, assuming he then knew who the State's witnesses would be. However, since attorneys are sometimes unable to predict before trial which of the opposing party's witnesses will be the most valuable, we decline to impose a stricter identification requirement than the one set forth in the text. Nonetheless, to avoid abuse of the discovery process, and to minimize "fishing expeditions," trial courts may exercise discretion in determining whether certain witnesses for whom criminal records are requested are so clearly unimportant (i.e. foundation witnesses, those whose testimony is duplicative on a minor point, etc.), that their impeachment would be immaterial, and deny appellant's motion with respect to those witnesses. *See State v. Humphrey,* 217 Kan. 352, 537 P.2d 155, 161 (1975) (holding that the prosecution need not disclose criminal records of "state's witnesses whose testimony is not seriously sub-

ject to impeachment, such as medical experts, police officers and innocent bystanders"). *Cf. Hill v. Superior Court,* 10 Cal.3d 812, 112 Cal. Rptr. 257, 262–63, 518 P.2d 1353, 1358–59 (1974) (concerned by heavy burden imposed on judicial system by *Engstrom v. Superior Court,* 20 Cal.App.3d 240, 97 Cal.Rptr. 484 (1971), which held that defendant was entitled to any rap sheets of all prosecution witnesses, including those "who will testify to facts about which it appears there will be no dispute or which have only minimum significance in the case," California Supreme Court granted trial court discretion to determine whether to order disclosure of criminal records of particular prosecution witnesses).

**20.** Appellant's dilemma is explained *supra,* at note 13.

**21.** Other jurisdictions have considered the scope of the prosecution's discovery obligation in this regard. *See, e.g., United States v. Perdomo,* 929 F.2d 967, 971 (3rd Cir.1991) (requiring disclosure of criminal records by the prosecution so long as the records are "in the possession of some arm of the state"); *State v. Humphrey,* 217

such that suppression of those records constituted prejudicial error.[22]  *See, e.g., State v. Hall,* 172 W.Va. 138, 304 S.E.2d 43, 47 (1983).  If the trial court determines · that appellant suffered harmful error, a new trial will be necessary.  If no prejudice to appellant is found, the conviction will stand.

## CONCLUSION

We affirm the trial court's determination that W.M.'s statements made on the morning of her alleged molestation were admissible as excited utterances.  However, we hold the trial court applied an erroneous definition of "good cause" in demanding supplementation of appellant's motion for discovery of the criminal records of prosecution witnesses, and remand for a determination of whether appellant was prejudiced by this error.

GARFF, J., concurs.

JACKSON, Judge (concurring):

I concur with the majority but write separately to clarify the standard of review on the admissibility of hearsay evidence under the excited utterance exception.  I point out the perseverance of the well-established review standard of deferring to the trial court's admissibility determination, absent an abuse of the court's discretion.  I believe that the majority's broad reading of footnote dicta in *State v. Ramirez,* 817 P.2d 774, 781 n. 3 (Utah 1991), is inappropriate and potentially problematic.  More-

Kan. 352, 537 P.2d 155, 161 (1975) ("The effort required by the prosecution to obtain criminal conviction records from the Bureau of Criminal Identification and Investigation is minimal compared with the potential value of such records to the defense.  Therefore, ... the prosecution should be required, on request, to obtain and make available information concerning ... convictions of prosecution witnesses."); *State v. Coney,* 294 So.2d 82, 86 (Fla.1973) (defining "possession" as encompassing information in either the "actual *or constructive* possession of the State, not limited to that in the physical possession of the State Attorney's office, and including data obtainable from the FBI, etc.") (emphasis in original).

We believe a standard similar to those applied in the above cases best satisfies the defense's need to gain disclosure of potentially valuable criminal records, without forcing the prosecution to unreasonably perform research at the behest of, and for the benefit of, the defense.  Thus, on remand, the prosecution should be deemed to have been obligated to produce the requested information about criminal records of prosecution witnesses if, at the time defendant filed his discovery motion, (1) the prosecution had actual control or possession of the records, (2) the prosecution had actual knowledge that any such records existed, or (3) such records were in the actual possession of either the County Attorney's office for the county in which the prosecution took place or the Utah State Bureau of Criminal Identification.

**22.**  Ordinarily, this determination could be made indirectly, through application of constitutional law.  Since the fifth and fourteenth amendments to the United States Constitution require the prosecution to disclose evidence favorable to the accused, the prosecution is clearly obligated to come forward with evidence the suppression of which would prejudice the defense's

case.  *Brady v. Maryland,* 373 U.S. 83, 86–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963); *State v. Carter,* 707 P.2d 656, 661 (Utah 1985).  Since the prosecution did not disclose any criminal records to the defense in the instant case, it might be appropriate to conclude, absent some showing to the contrary, that the prosecution possessed no exculpatory records with regard to any material witnesses.  *See State v. Worthen,* 765 P.2d 839, 850 (Utah 1988) (rejecting defendant's claim that prosecutor withheld substance of exculpatory witness interviews, absent some evidence that the interviews had taken place and were exculpatory).  To do otherwise would be to impugn the prosecution's conduct on no more than the strength of appellants' unsupported accusations—an act we certainly would choose to avoid.

However, the issue of whether impeachment evidence should be considered "exculpatory" under *Brady* has never been addressed in Utah, and has not been resolved with any great consistency by other jurisdictions.  *See* Annotation, *Accused's Right to Discovery or Inspection of 'Rap Sheets' or Similar Police Records about Prosecution Witnesses,* 95 A.L.R.3d 832 (1979).  While we believe impeachment evidence may, in certain circumstances, so impact a case as to constitute exculpatory evidence, we can not say the prosecution viewed the issue in the same way.  Therefore, it is not clear from the record—and the State has taken no pains to enlighten us on appeal—whether the prosecution's failure to disclose criminal records under *Brady* reflected a complete absence of such evidence, the absence of any such evidence in the prosecution's "possession" under *Brady,* or the prosecution's failure to recognize a duty of disclosure even though it possessed some such evidence.  Accordingly, we decline to infer harmless error from the prosecution's failure to disclose any criminal records in this case.

over, it runs counter to the traditional "abuse of discretion" review standard for evidentiary rulings in general. *State v. Iorg,* 801 P.2d 938, 939 (Utah 1990) (trial court's admission or rejection of evidence will not be disturbed unless the court has clearly abused its discretion); *State v. Griffiths,* 752 P.2d 879, 883 (Utah 1988) (it is well settled that trial court rulings on admissibility of evidence are not to be overturned in absence of clear abuse of discretion); *State v. Gentry,* 747 P.2d 1032, 1035 (Utah 1987) (trial court's evidentiary ruling will not be reversed absent abuse of discretion); *State v. McClain,* 706 P.2d 603, 604 (Utah 1985) (appellate court will not interfere with rulings on evidentiary matters unless it clearly appears discretion is abused).

The trial judge must decide whether the witness testifying of the out-of-court statement is credible and whether the statement itself is trustworthy in light of other evidence.[1] We review the decision with deference because the trial judge is in a better position to appraise the nuances and intangibles crucial to a just result.

I now turn to cases dealing with admission of hearsay evidence and specifically with the excited utterance exception. *State v. Thomas,* 777 P.2d 445 (Utah 1989) is such a case. There, defendant challenged admission of the testimony of a peace officer about statements made by the victim during an interview conducted one to two hours after a rape incident. *Id.* at 448–49. The trial judge admitted the testimony on the ground that the declarant's statements came under the excited utterance exception pursuant to Utah R.Evid. 803(2). *Id.* at 449. The court stated that this "determination rests in the sound discretion of the trial court." *Id.* Another case, *State v. Kaytso,* 684 P.2d 63 (Utah 1984), was decided under former Rule 63(4)(b), which allowed admission of a statement made "under the stress of nervous excitement." There the court concluded:

---

**1.** The Rules of Evidence "vest the trial court with considerable discretion as to whether relevant hearsay should be admitted." Charles L.

The trial judge did not abuse his prerogative under Rule 63(4). Consequently, as traditionally we are obliged to do under such circumstances, we leave undisturbed the judgment below.

*Id.* at 64.

The Pacific Reporter states consistently apply the abuse of discretion standard of review for excited utterance rulings. *State v. Strauss,* 119 Wash.2d 401, 832 P.2d 78, 86 (1992) (trial court's determination that a statement falls within the excited utterance exception will not be disturbed absent an abuse of discretion); *State v. Bryant,* 65 Wash.App. 428, 828 P.2d 1121, 1123 (1992) (excited utterance exception to the hearsay rule is within the sound discretion of the trial court and is reviewable only for abuse of that discretion); *Montez v. Superior Court,* 4 Cal.App. 4th 577, 583–84, 5 Cal. Rptr.2d 723, 726–27 (Cal.App. 2 Dist.1992) (abuse of discretion standard applied to trial court's finding that declaration made under sufficient stress to qualify for admissibility under the excited utterance provisions of the hearsay rule); *People v. Garcia,* 826 P.2d 1259, 1264 (Colo.1992) (in reviewing trial court's decision on the admissibility of statements under the excited utterance exception, we must consider the totality of circumstances presented to determine whether the trial court abused its discretion); *State v. Thompson,* 169 Ariz. 471, 820 P.2d 335, 338 (1991) (appellate court concluded trial court had abused its discretion in admitting, as excited utterances, statements made by two young children); *State v. Bingham,* 116 Idaho 415, 776 P.2d 424, 430 (1989) (the trial court did not abuse its discretion in admitting the excited utterance of the victim); *Hawkins v. State,* 761 P.2d 918, 920 (Okla.Crim.App.1988); *Balentine v. State,* 707 P.2d 922, 926 (Alaska Ct.App.1985); *Kelly v. State,* 694 P.2d 126, 132–33 (Wyo. 1985); *Shea v. City & County of Honolulu,* 67 Haw. 499, 692 P.2d 1158, 1165 (1985); *State v. Norgaard,* 201 Mont. 165, 653 P.2d 483, 488 (1982); *Vander Veer v. Toyota*

Powell & Robert W. Burns, *A Discussion of the New Federal Rules of Evidence,* 8 Gonz.L.Rev. 1, 21 (Fall 1972).

*Motor Distributors, Inc.,* 282 Or. 135, 577 P.2d 1343, 1350 (1978).

Moreover, the Federal Circuit Courts of Appeal also apply the abuse of discretion standard under the identical Federal Rule of Evidence 803(2). For example, in *United States v. Golden,* 671 F.2d 369 (10th Cir.1982), the defendant challenged testimony regarding the victim's statements to his grandmother. The Tenth Circuit stated:

> Rulings on evidentiary matters are committed to the discretion of the trial judge and will not be reversed on appeal unless it is shown that the ruling was a clear abuse of discretion or that it affected the substantial rights of the defendant.

*Id.* at 371. In view of the well-established body of state and federal law regarding the standard of review for evidentiary rulings of this type, it is "clear error" for the majority to adopt and apply the *Ramirez* dicta as the correct standard. The majority relies only on *Ramirez* for precedential support and pays no attention to the cases cited above.[2] Further, *Ramirez* involved a suppression hearing to decide the constitutionality of admitting relevant eyewitness identification testimony, not admission of hearsay evidence.

I agree with the majority's conclusion that the excited utterances should be admitted. I differ with the majority's circular analysis to reach the same result. I would affirm the trial judge's ruling because the trial court did not abuse its discretion in admitting the hearsay statements under the Rule 803(2) hearsay exception.

**2.** I note that *State v. Cude,* 784 P.2d 1197 (Utah 1989), relied upon by the majority, states a deferential review: "This court will not disturb a trial court's ruling on the admissibility of evidence absent a showing of clear error." *Id.* at 1201 (footnote omitted). This "clear error" line of authority in *Cude* can be traced directly back to the case of *State v. Tuttle,* 16 Utah 2d 288, 399 P.2d 580, 582 (Utah 1965), *cert. denied,* 382 U.S. 872, 86 S.Ct. 129, 15 L.Ed.2d 110 (1965), which states:

> The practical exigencies of a trial render it imperative that the trial judge have the prerogative of ruling upon questions of admissibility of evidence and upon issues of fact incidental to that purpose. For this reason, and because of his position of advantage to observe the demeanor of witnesses and other factors bearing on credibility, his ruling thereon should not be disturbed unless it clearly appears that he was in error.

Thus, *Tuttle* actually describes an abuse of discretion standard.