1999 UT 8

**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Robert Daniel PLIEGO, Defendant and Appellant.**

**No. 970289.**

Supreme Court of Utah.

Jan. 29, 1999.

Jan Graham, Att'y Gen., Marian Decker, Christine F. Soltis, Asst. Att'ys Gen., Marsha S. Atkin, Salt Lake City, for plaintiff.

Janet M. Conway, Salt Lake City, for defendant.

HOWE, Chief Justice:

¶1 We granted defendant Robert Daniel Pliego's petition for interlocutory appeal to review the trial court's order denying his discovery motion, wherein he sought an order requiring the prosecution to obtain and produce the victim's mental health records, and for an *in camera* inspection of records of the Division of Family Services (DFS) and the Child Protective Services (CPS) pertaining to the victim.

## FACTS

¶2 This case arises from the alleged rape of a sixteen-year-old girl, B.H., while she was at a teenage drinking party on the evening of December 28, 1997. B.H. asserts that after she was beaten by several female gang members, Pliego and his co-defendant, Christopher Wickham, took turns raping and sodomizing her. Following the alleged beatings and rapes, B.H. was unable to move from the bedroom where the incident took place and remained there until the next morning.

¶3 When she awoke, B.H. called her sister and asked her to pick her up. Upon arriving, the sister immediately noticed that B.H. had suffered serious physical injury. B.H. told her what had happened but refused to report it to the authorities because she had recently run away from the Adolescent Residential Treatment and Education Center (ARTEC), a nonprofit organization specializing in teenage behavioral problems, and did not want to be returned there. Throughout the next two months, she received medical attention several times for abdominal pain and vaginal bleeding. Finally, on February 22, 1997, almost two months after the alleged rapes, B.H. informed the police about the incident.

¶4 On the basis of B.H.'s allegations, the State charged Pliego with two counts of aggravated sexual assault in violation of Utah Code Ann. § 76–5–405, both first degree felonies. During the trial court proceedings, Pliego moved for an order requiring the prosecution to obtain and produce B.H.'s mental health records at ARTEC and any other institution, and for an *in camera* inspection of all Department of Family Services and Child Protective Services records pertaining to B.H. The trial court denied this motion, holding that it could not order the production of these records absent a showing of good cause. Trial court proceedings have been stayed pending the resolution of this appeal.

¶5 Pliego appeals, contending that (1) under rule 16(a)(5) of the Utah Rules of Criminal Procedure, he was entitled to obtain a copy or an *in camera* inspection of B.H.'s ARTEC, DFS, and CPS records from the prosecution; and (2) the court's failure to order their production, or to at least review them *in camera*, violated his Fifth and Sixth Amendment rights.

## ANALYSIS

¶6 Before we reach the merits of Pliego's appeal, we must first address the State's objection to the addendum attached to Pliego's brief. The State correctly points out that exhibits A, B, C, D, and E, which are attached to Pliego's brief as an addendum, all contain evidentiary documents that are not part of the record on appeal. It therefore requests that we not consider these documents and strike the same.

¶7 An appellate court's "review is . . . limited to the evidence contained in the record on appeal." *Wilderness Bldg. Sys., Inc. v. Chapman*, 699 P.2d 766, 768 (Utah 1985) (footnote omitted). Therefore, we will not consider evidence which is not part of the record. Rule 11(e)(2) of the Utah Rules of Appellate Procedure requires the appellant to make sure that the record on appeal includes all of the relevant evidence. Additionally, although the record may be supplemented if anything material is omitted, it may not be done by simply including the omitted material in the party's addendum. *See* Utah R.App. P. 11(h). Accordingly, we hold that an appellant's addendum may not consist of

evidence that is outside the record on appeal. We conclude that Pliego improperly included exhibits A–E in his addendum. We therefore strike this extraneous evidence and do not consider it for purposes of this appeal.

## I. DISCOVERY OF THE ARTEC, DFS, AND CPS RECORDS

█ ¶ 8 ˙Pliego first argues that the trial court erred in refusing to order the prosecution to produce B.H.'s ARTEC records, DFS records, and CPS records pursuant to rule 16(a) of the Utah Rules of Criminal Procedure because they may contain evidence that he can use to impeach B.H.'s testimony and credibility at trial. However, this argument misses the point. The dispositive issue in this case is whether rule 16(a) requires a prosecutor to disclose to the defense records which he does not possess and of which he has no knowledge.

¶ 9 A prosecutor's duty to disclose certain types of evidence to the defense is governed by rule 16(a):

(a) Except as otherwise provided, the prosecutor shall disclose to the defense upon request the following material or information *of which he has knowledge:*

(1) relevant written or recorded statements of the defendant or codefendants;

(2) the criminal record of the defendant;

(3) physical evidence seized from the defendant or codefendant;

(4) evidence *known* to the prosecutor that tends to negate the guilt of the accused, mitigate the guilt of the defendant, or mitigate the degree of the offense for reduced punishment; and

(5) any other item of evidence which the court determines on good cause shown should be made available to the defendant in order for the defendant to adequately prepare his defense.

Utah R.Crim. P. 16(a)(1)-(5) (emphasis added). In essence, the foregoing rule requires the prosecutor to disclose only those materials of which he has knowledge. It does not require him to make an investigation on behalf of the defendant, searching for exculpatory and mitigating evidence. *See State v. Shaffer,* 725 P.2d 1301, 1306 (Utah 1986)

(holding that "the prosecut[or] is not required 'to search for exculpatory evidence, conduct tests, or exhaustively pursue every angle on a case'" (quoting *State v. Hall,* 22 Wash.App. 862, 867, 593 P.2d ‚554, 558 (1979))).

¶ 10 We note that our rule 16(a) is slightly different from the comparable rules of many other jurisdictions, including the Federal Rules of Criminal Procedure. The equivalent rules in these jurisdictions require that "the material sought must be within the possession, custody, or control of the party to whom the discovery request is made." 23 Am.Jur.2d *Depositions and Discovery* § 421 (1983) (footnote omitted). In contrast, our rule, as noted above, requires that the material sought by the defendant be known to the prosecutor. Although the difference between our rule and the rules of these other jurisdictions is subtle—since a prosecutor would be deemed to have knowledge of all the materials contained in his or her file— this difference nevertheless merits discussion.

¶ 11 We begin by noting that our rule obviously requires the prosecutor to have knowledge of the material's existence. A prosecutor cannot be expected to disclose materials which he does not know exist, nor is he required to turn over every stone or "exhaustively pursue every angle" searching for exculpatory evidence or other evidence that may be helpful to the defendant's preparation of his case. *Shaffer,* 725 P.2d at 1306.

¶ 12 In addition to knowing that the material exists, the prosecutor must also know that the material contains information that should be disclosed to the defendant under rule 16(a). In *State v. Fierst,* 692 P.2d 751, 752 (Utah 1984) (per curiam), we held that the prosecutor did not violate the discovery rules for failing to disclose exculpatory evidence where there was no showing that he knew or should have known that this evidence would be of any importance at trial. The defendant in *Fierst* was charged with receiving stolen property—a truck. The evidence at trial showed that at the time he was arrested, he was wearing a pair of gloves. At trial, the defendant attempted to explain why he was wearing gloves by claiming that

at the time of his arrest, he was suffering from a skin ailment on his hands. *See id.* Although the jailhouse records showed that he had requested medical treatment for the ailment shortly after his arrest, that information was not disclosed by the prosecutor. Nevertheless, because there was nothing in the record from which it could be inferred that the prosecutor knew or should have known that the defendant's request for medical treatment would be an issue at trial, we concluded that the prosecutor did not violate the rules by failing to disclose this information to the defense. *See id.* In sum, our holding in *Fierst* is that a prosecutor violates the discovery rule, rule 16(a), only when he fails to disclose materials which he knows or should know contain evidence that is exculpatory or that would otherwise be helpful to the defendant in the preparation of his defense.

¶ 13 We further note that although the rule refers to the prosecutor's knowledge, it is not so limited. The knowledge of the prosecutor's staff and the investigating police officers is imputed to the prosecutor. *See* 23 Am.Jur.2d *Depositions and Discovery* § 421 (1983) (stating that "the obligation of a state's attorney to disclose information in the possession of the state is not limited to materials in the prosecutor's office, but also includes information held by the various police agencies and officers involved in the case").

¶ 14 In the instant case, we hold that the prosecutor did not have any duty to disclose or produce to the defense B.H.'s ARTEC, DFS, and CPS records. The record shows that neither the prosecutor, her staff, nor the investigating officers possessed or had knowledge of these materials or the evidence contained therein. Rather, it appears that only ARTEC, DFS, and CPS possessed and had knowledge of these records.

¶ 15 Despite the foregoing, Pliego argues that the prosecutor nevertheless should have been ordered to obtain and produce these records. He relies on the court of appeals' decision in *State v. Mickelson,* 848 P.2d 677 (Utah Ct.App.1992), to argue that rule 16(a) requires the prosecutor to disclose "[any] records in the possession of other state agencies." In *Mickelson,* the court of appeals stated:

[T]he prosecution should be deemed to have been obligated to produce the requested information about the criminal records of prosecution witnesses if ... (1) the prosecution had actual control or possession of the records, (2) the prosecution had actual knowledge that any such records existed, or (3) such records were in the actual possession of either the County Attorney's office for the county in which the prosecution took place or the Utah State Bureau of Criminal Identification.

*Id.* at 691–92 n. 21. He further relies on *United States v. Perdomo,* 929 F.2d 967, 971 (3d Cir.1991), cited by the *Mickelson* court, where the United States Court of Appeals for the Third Circuit held that the prosecutor is deemed to be in possession of all information that is "in the possession of some arm of the state." On the basis of the foregoing, he argues that we should hold that the prosecutor in this case had knowledge of the ARTEC, DFS, and CPS records. We disagree.

¶ 16 First, we note that even if we agreed with Pliego's argument, which we do not, the prosecutor in this case would nevertheless not be required to disclose B.H.'s ARTEC records to Pliego. ARTEC is not an arm of the State; it is a private, nonprofit organization that specializes in teenage behavioral problems.

¶ 17 Second, Pliego's reliance on *Mickelson* is misplaced because that case involved a defendant's request for copies of any criminal records of the prosecution's witnesses. *See Mickelson,* 848 P.2d at 687–88. Our court of appeals determined that "[s]ince Utah Code Ann. § 77–26–16 does not provide for dissemination of criminal records directly from the Bureau of Criminal Identification to defense counsel, ... [r]ule 16(a)(5) provide[d] the only practical means by which a defendant may gain access to criminal records of prosecution witnesses." *Id.* at 689 n. 16. In contrast to *Mickelson,* the prosecutor in the instant case does not have any greater access to the records sought by Pliego than does Pliego himself. Although it is true, as the trial court noted, that some of these records may be privileged medical records, that privilege would apply equally to both Pliego and the prosecutor. Therefore, if Pliego could

not obtain the records because of the privilege, then presumably neither could the prosecutor.

¶ 18   Finally, we further note our disagreement with the *Perdomo* rule, requiring the prosecutor to disclose materials that are "in the possession of some arm of the state." 929 F.2d at 971.   In our view, this requirement is too broad.   Such a rule would place a herculean burden on the prosecutor to search through records of every state agency looking for exculpatory evidence on behalf of the defendant.   As noted above, rule 16(a) of the Utah Rules of Criminal Procedure does not require as much.   Rather, the prosecutor's disclosure duty arises only when he, his staff, or the investigating officers come across exculpatory materials during their investigation.   Therefore, to the extent that *Mickelson* adopted the *Perdomo* rule, we decline to follow it.

¶ 19   In sum, we hold that rule 16(a) did not require the prosecutor to obtain and produce the ARTEC, DFS, and CPS records. We note that such a requirement would have placed the prosecutor in the burdensome position of having to subpoena the records herself.   Moreover, if any of the entities possessing these records had moved to quash the prosecutor's subpoena on the basis that such records were privileged, she would have been placed in the untenable position of having to argue that such records are not privileged even though such argument might be contrary to the State's own interests.

¶ 20   Rather than attempting to obtain the ARTEC, DFS, and CPS records through rule 16(a), Pliego should have attempted to get these records himself.   Rule 14(b) of the Utah Rules of Criminal Procedure provides in part that "[a] subpoena may command the person to whom it is directed to ... produce in court or to allow inspection of records, papers or other objects."   Therefore, Pliego should have attempted to subpoena the ARTEC, DFS, and CPS records, and if, as Pliego suggests, the holder of those records moved to quash the subpoena based on the privilege, then that motion could properly be opposed by Pliego, not by the prosecutor.   In sum, we conclude that Pliego was not entitled to an order requiring the prosecutor to obtain and produce these records pursuant to rule 16(a).

## II.   PLIEGO'S CONSTITUTIONAL RIGHTS

¶ 21   Pliego also argues that the trial court's denial of his discovery motion violated his Fifth Amendment rights to due process and a fair trial and his Sixth Amendment rights to confrontation and compulsory process.   However, because we have already concluded that Pliego failed to follow the proper procedure in obtaining B.H.'s ARTEC, DFS, and CPS records—i.e., by serving the holders of these records with a subpoena duces tecum—we do not reach his constitutional arguments.

## CONCLUSION

¶ 22   In conclusion, we hold that rule 16(a) of the Utah Rules of Criminal Procedure did not require the prosecutor to obtain and produce the ARTEC, DFS, and CPS records. Pliego should have sought these records himself by serving ARTEC, DFS, and CPS with a subpoena duces tecum.   Because he failed to follow that procedure, we do not reach his constitutional arguments.

¶ 23   Accordingly, we affirm the trial court's order and remand for further proceedings consistent with this opinion.

¶ 24   Associate Chief Justice DURHAM, Justice ZIMMERMAN, Justice RUSSON, and Judge BILLINGS concur in Chief Justice HOWE's opinion.

¶ 25   Justice STEWART does not participate herein; Utah Court of Appeals Judge JUDITH BILLINGS sat.