**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 13, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CHRISTOPHER WICKHAM,

　　　　　Petitioner-Appellant,

v.

CLINT FRIEL; STATE OF UTAH,

　　　　　Respondents-Appellees.

No. 08-4023
(D.C. No. 2:03-CV-595-TS)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

A Utah state jury convicted Christopher Wickham of two counts of

aggravated sexual assault, for which he was sentenced to serve two consecutive

ten-year-to-life terms in prison. He appeals from an order of the federal district

court denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus. This

court previously granted him a certificate of appealability ("COA") to review the

---

[*]　　　After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

issue whether his trial counsel was constitutionally ineffective in failing to seek the production of his victim's mental health records. *See* 28 U.S.C. § 2253(c) (requiring habeas petitioner to obtain COA to pursue appeal from habeas corpus denial). We now affirm the denial of habeas relief.

I

A

Shortly before Christmas 1995, the victim, then a sixteen year-old girl, ran away from the Adolescent Residential Treatment and Educational Center ("ARTEC"), a treatment facility in Salt Lake County specializing in teenage behavioral problems. The victim testified at trial that she had been at ARTEC because she had an alcohol problem, that she did not do well in foster homes, and that she ran away from ARTEC because she wanted to be with her family at Christmas.

Three days after Christmas, on December 28, 1995, the victim, then a sixteen year-old girl, and her friend, Rochelle, met Mr. Wickham at a bus stop. The victim gave Mr. Wickham money to buy liquor. He bought some grain alcohol and they proceeded to Rochelle's house. The victim met a number of people at the house, including a man named Danny Pliego. Mr. Wickham made some drinks containing the grain alcohol and punch. Over the course of a couple of hours, the victim consumed two or three of the drinks and watched movies.

Some of the people at the house asked the victim if she planned to spend the night. They told her "if you spend one night here, you get jumped." Aplt. App., tab "A," testimony of victim, at 14. The victim interpreted this as a threat that she might be beaten (not raped) and, while she initially shrugged it off as a joke, she eventually became sufficiently worried that she called three of her sisters, asking to be picked up; none was able to come get her. Eventually, the victim went to Mr. Wickham's bedroom to sleep. Mr. Pliego followed her into the room and began touching and kissing her. She told him to leave her alone. He left the room for a while and she went to sleep.

Later, Mr. Pliego returned and began touching and kissing her again. He called Mr. Wickham into the room. Mr. Wickham held her hands down and covered her mouth while Mr. Pliego raped her. Then the two men traded places and Mr. Wickham raped her vaginally and anally. The victim was unable to move from the bedroom and remained there until the next morning, when her sister picked her up.

Upon arriving, the victim's sister immediately noticed that she had suffered serious physical injuries. The victim eventually told her what had happened but refused to go to a doctor or report it to the police because she was afraid of retaliation from the people in the house, or of being returned to ARTEC. In the two months after the rape, the victim received medical attention several times for

abdominal pain and vaginal bleeding. Finally, in February 1996, she informed the police about the incident.

B

The state of Utah charged both Mr. Wickham and Mr. Pliego with two counts of aggravated sexual assault. Mr. Wickham rejected a plea bargain and went to trial. After a jury convicted Mr. Wickham, his counsel filed a motion for new trial, but withdrew it after Mr. Pliego refused to talk with him or to provide an affidavit attesting to Mr. Wickham's innocence. Mr. Wickham's counsel did not appeal his conviction, although Mr. Wickham later stated that he asked him to do so.

In the meantime, as Mr. Pliego himself faced the prospect of trial, he began attempting to obtain the victim's mental health record from state agencies associated with her stay at ARTEC. While he failed in an effort to compel the prosecution to provide them,[1] the records were later released to him inadvertently by one or more of the agencies involved. These records revealed that the victim had previously made false sexual abuse allegations. Subsequently, Mr. Pliego

---

[1]     Mr. Pliego filed a discovery motion in which he sought an order requiring the prosecution to provide him with the victim's mental health records, and for an *in camera* inspection of her Division of Family Services and Child Protective Services records. The state district court denied his motion. He appealed the denial to the Utah Supreme Court, which held that the prosecutor had no duty to obtain and produce the records. *State v. Pliego*, 974 P.2d 279, 283 (Utah 1999). The court further advised Mr. Pliego that he should have attempted to obtain these records himself by subpoenaing them from the relevant agencies. *Id.*

pleaded guilty to a lesser charge of unlawful sexual intercourse, a third degree felony under Utah law. The prosecutor later testified that a primary concern in offering Mr. Pliego a favorable plea bargain was the fact that the victim's mental health records called the veracity of her story into question by revealing that she had previously lied about sexual abuse unrelated to this case.

C

In due course, Mr. Wickham filed a petition for post-conviction relief in state court. His petition included a claim that trial counsel was ineffective in failing to seek production of the mental health records obtained by Mr. Pliego's counsel, and that these records and other testimony constituted newly-discovered exculpatory evidence. As part of his post-conviction efforts, Mr. Wickham's counsel subpoenaed the mental health records from various governmental and mental health agencies, including the Division of Family Services and Child Protective Services (DCFS) and Valley Mental Health. These parties filed motions to quash the subpoenas, contending, among other things, that the records were privileged. Mr. Wickham responded with a motion to compel production of the records. The state district court denied the motions to quash, and ordered the materials produced to the court for an *in camera* inspection.

After reviewing the records *in camera*, the state district court released to counsel those records it determined were material to his claim. These records showed that the victim had a history of lying about sexual abuse. She had made

accusations involving ritualistic Satanic abuse and accused her father and brother of being part of a cult and of sexually assaulting her. She had admitted to her therapist to lying about sexual abuse.

At an evidentiary hearing held by the state district court, Mr. Wickham's trial counsel testified that he presented no evidence along these lines at trial because he had not been aware of it. He also testified that he made no effort to obtain the victim's mental health records because he believed they were privileged and confidential. Counsel further revealed, however, that Mr. Wickham had been offered the same plea bargain that Mr. Pliego received, a guilty plea to one third-degree felony, but had elected to go to trial.

The state district court rejected Mr. Wickham's ineffective assistance claim. But it found that the mental health records were newly-discovered evidence under Utah law, entitling him to a new trial. The state appealed to the Utah Supreme Court. The Utah Supreme Court determined that the new evidence did not warrant a new trial. *Wickham v. Galetka*, 61 P.3d 978, 980-81 (Utah 2002). In its opinion, however, the Utah Supreme Court did not expressly address the claim at issue here: that Mr. Wickham's counsel was constitutionally ineffective in failing to obtain the victim's mental health records. Mr. Wickham pointed out this omission in a petition for rehearing, but the Utah Supreme Court denied the rehearing petition without further analysis.

In 2003, matters moved from state to federal court. Mr. Wickham filed the present petition in federal district court, raising eleven issues including ineffective assistance of counsel. The district court denied most of the claims, including the ineffective assistance claim, as untimely. On appeal, a panel of this court reversed the untimeliness ruling concerning the ineffective assistance claim and remanded for further proceedings. *Wickham v. Friel*, 216 F. App'x 784, 790 (10th Cir. 2007). On remand, the district court considered the state court's holding that Mr. Wickham's counsel had not been ineffective. It determined that this holding did not rest on an unreasonable determination of the facts or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1)-(2). It therefore denied habeas relief, and that decision is now before us in this appeal.

II

The district court applied the deferential AEDPA standard of review prescribed by 28 U.S.C. § 2254(d). In its opinion addressing Mr. Wickham's post-conviction claims for relief, the Utah Supreme Court expressly discussed only two of the three bases Mr. Wickham advanced in support of his ineffective assistance claim, omitting mention of counsel's failure to obtain the victim's mental health records. *See Wickham*, 216 F. App'x at 786. There is some reason to question, therefore, whether the ineffective assistance claim before us was "adjudicated on the merits" such that it merits AEDPA deference. *See Brown v.*

-7-

*Sirmons*, 515 F.3d 1072, 1087 (10th Cir. 2008). For this reason, we apply a *de novo* review to legal questions presented in this appeal. In doing so, however, we nonetheless defer to the state district court's factual findings by presuming them correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Morris v. Burnett*, 319 F.3d 1254, 1267 (10th Cir. 2003).

To establish ineffective assistance of counsel, a petitioner must prove that counsel's performance was constitutionally deficient and that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We believe that Mr. Wickham fails on the first of these tests. To establish deficient performance, counsel's performance must be "completely unreasonable," not "merely wrong." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (quotation omitted). We cannot conclude that counsel's performance in this case fell to such a low level.

We reach this conclusion based in large measure because of the high standard required to access mental health records in Utah. Under Utah law, information communicated to a mental health therapist is privileged from disclosure. *See* Utah R. Evid. 506(b); *see also* Utah Code Ann. § 58-60-114(1) (West 2008) (prohibiting mental health therapist from disclosing confidential communications). An exception exists, to be sure, when the information communicated to the therapist is "relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which that condition is an

element of any claim or defense." Utah R. Evid. 506(d)(1). But, in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), the Supreme Court, considering a similar rule of privilege in the case of a defendant convicted of sexual offenses against a child, balanced the state's interest in privacy of the child's records against the defendant's right to due process. It held that due process entitled the defendant to *in camera* review by the state trial court of his alleged victim's otherwise privileged Children and Youth Services file to determine whether it contained evidence material to the defense. *Id.* at 57-61. Applying *Ritchie*, the Utah Supreme Court has held that "if a defendant can show *with reasonable certainty* that exculpatory evidence exists which would be favorable to his defense, *Ritchie* gives him the right to have the otherwise confidential records reviewed by the trial court to determine if they contain material evidence." *State v. Cardall*, 982 P.2d 79, 85 (Utah 1999) (emphasis added).

A showing of "reasonable certainty" requires more than a general request for anything in the records that might be exculpatory. *State v. Blake*, 63 P.3d 56, 62 (Utah 2002). Rather, "specific facts must be alleged. These might include references to records of only certain counseling sessions, which are alleged to be relevant, independent allegations made by others that a victim has recanted, or extrinsic evidence of some disorder that might lead to uncertainty regarding a victim's trustworthiness." *Id.* "This is a stringent test, necessarily requiring

some type of extrinsic indication that the evidence within the records exists and will, in fact, be exculpatory." *Id.* at 61.

During the evidentiary hearing in this case, Mr. Wickham's counsel stated that he did not know prior to trial that the victim's mental health records contained information about prior false accusations of sexual abuse. Neither are we pointed to any convincing reason to believe Mr. Wickham's counsel could have been expected to discover independent or extrinsic evidence suggesting that the victim's records contained information along these lines. In these circumstances, we must agree with the federal district court that assessed Mr. Wickham's habeas action in the first instance: "Although [Mr. Wickham's] trial counsel knew in general that the social services records existed, he would not have been entitled, under Utah law at the time, to conduct a 'fishing expedition' through the victim's records in vague hopes to unearth something specifically damaging to the victim's credibility." Aplt. App., tab "Q," at 15.

Mr. Wickham argues that his attorney's ineffectiveness is shown by the fact that Mr. Pliego's counsel subpoenaed the records and eventually obtained them. He suggests his counsel could and should have done likewise. This ignores the fact that Mr. Pliego did not obtain the records through lawful process, but through an administrative error, without the judicial oversight provided for by Utah law. Such a mistake cannot form the basis for habeas relief in Mr. Wickham's case.

-10-

No individual has an "entitlement to the luck of a lawless decisionmaker." *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993).

Mr. Wickham replies by underscoring that his counsel ultimately obtained the records in post-conviction proceedings. Counsel argued to the district court in Mr. Wickham's post-conviction proceeding that "he [was] aware of specific information contained in the victim's mental health records which could potentially cast doubt on her credibility" and thereby was able to obtain the records. Aplt. App., tab "F," at 5. But counsel was only able to make this required showing because, by then, Mr. Pliego had the records and counsel knew of their contents. This does not demonstrate that Mr. Wickham's *trial* counsel, who did not have the records and could not have made a showing of entitlement to them, was constitutionally ineffective.

Mr. Wickham argues that, even without the benefit of their inadvertent release to Mr. Pliego, his trial counsel could have shown enough to obtain an *in camera* review by arguing (1) his story differed from that of the victim, and she was lying about the alleged rape; (2) the victim reported the rape to DCFS, and the prosecution had provided him with a transcript of the DCFS interview; (3) the victim was not credible because she was committed to ARTEC for mental health problems; and (4) at the time of the rape, she was an escapee from ARTEC. He contends that failure to present these facts to the district court and thereby to

obtain the records represented a constitutionally-defective failure to investigate facts relevant to his defense.

None of these facts, individually or in tandem, would have required release of the records. Mr. Wickham's contention that the victim was lying *in his case* would not have been the same as showing that she had a propensity to lie. *Cf. Cardall*, 982 P.2d at 85 (noting defendant's contention that victim was "a habitual liar" and that records sought would show that she had lied about a prior attempted rape or sexual touching incident involving a school janitor). Although counsel had a copy of the DCFS interview, there is no indication that the interview provided him with any independent or extrinsic information concerning her truthfulness. The fact that the victim had been committed to a behavioral facility from which she had managed to escape at the time of the rape did not cast sufficient doubt on her truthfulness to make it likely that the trial court would have conducted an *in camera* inspection of her mental health records. *See Blake*, 63 P.3d at 61-62 (rejecting, as justification for *in camera* review, counsel's claim that the victim's mental health records should be reviewed because they "may have information about medication she's taking that effect [sic] her credibility; about whether she has recanted or not . . . [and] she may have a mental illness where part of the diagnosis is chronic lying."). In sum, Mr. Wickham cites no independent or extrinsic evidence on which counsel could have relied to show that the victim was likely to be lying or delusional.

Finally, Mr. Wickham launches an attack on the state court's factual findings. Although the federal district court conceded (and we do not disagree) that Mr. Wickham's counsel knew of the *existence* of the victim's records, by virtue of her previous confinement at ARTEC, Mr. Wickham seeks to overturn what he contends is a contrary factual finding of the state district court on that issue. We find this argument legally irrelevant, and in any event insufficient to overturn the state court's finding.

First, the issue holds little or no relevance here: in assessing ineffective assistance, we are not concerned with whether trial counsel knew records *existed*, but whether, in the exercise of reasonable diligence, he could have shown with reasonable certainty that the *contents* of the records were exculpatory in order to obtain an *in camera* review. For reasons we have already explored, on that dispositive question before us, we think the answer is clearly no.

Second, and in any event, we cannot say that the state court's findings, when read as a whole, were clearly erroneous. The state court found that Mr. Wickham's trial counsel "did not know that [the victim's mental health records] existed nor could he have discovered them using reasonable diligence." Aplt. App., tab "N," at 2. This finding was essential to the court's grant of a new trial on the basis of "newly discovered material evidence." *See* Utah Code Ann. § 78-35a-104(1)(e)(i) (requiring that "neither the petitioner nor petitioner's counsel *knew of the [newly discovered] evidence* . . . and the evidence could not have

been discovered *through the exercise of reasonable diligence*." (emphasis added)), renumbered as Utah Code Ann. § 78B-9-104(1)(e)(i). Had the state district court found otherwise -- *i.e.*, that counsel knew of the records or that he could have discovered them using reasonable diligence -- it could not have granted Mr. Wickham a new trial. The challenged factual finding was therefore actually *favorable* to Mr. Wickham at the time the state district court made it. Even more to the point, there is good reason to believe that the state district court's challenged factual finding was not that counsel was unaware of the *existence* of any records, but rather that counsel did not know the *contents* would prove exculpatory. *See* Aplt. App., tab "N," at 2 finding 5 ("Records generated by ARTEC and [DCFS] . . .("The Records") indicate that [the victim] had lied about being sexually abused."). Read this way, the factual finding must be upheld against Mr. Wickham's challenge. As we have seen, the undisputed evidence showed that trial counsel had no knowledge of the fact that the victim's records contained information about her prior false rape allegations.

The judgment of the district court is AFFIRMED.

Entered for the Court

Neil M. Gorsuch
Circuit Judge

-14-