*458 ROTH, Judge
(response to the concurrence):
¶91 I write separately to make two points in response to Judge Orme’s concurrence. First, the concurrence as I understand it reads rule 11 to mean that a reconstructed record is the same as any other record on appeal because the reconstruction is “made to conform to the truth.” Utah R. App. P. 11(h). Under that interpretation, anything not portrayed in the reconstructed record in effect did not take place, which drastically reduces the analysis required to dispose of this case. However, I do not believe the absence of certain details in the reconstructed record can be taken as proof of their absence from the actual proceeding or that their absence precludes us from making inferences—in the form of presumptions—that certain things occurred below which were not specifically included in the reconstruction.
¶92 Utah law recognizes that records are not always pei’fectly complete, and it does not require them to be. E.g., State v. Gardner, 2007 UT 70, ¶ 26, 167 P.3d 1074 (affirming this court’s determination that a record with testimonial gaps was nonetheless complete enough to answer the question presented). Thus, a record sufficient to afford meaningful review need not always be a complete record, and this is true regardless of whether the record is reconstructed or not. One way to conceptualize this situation is to place all records on appeal along a scale from nonexistent at worst to complete at best. Obviously, any record approaching the nonexistent side of the spectrum cannot sustain an appeal. However, a record sufficient for appeal might still contain gaps that prevent it from being perfectly complete. See id. This reality drives the presumptions of regularity of proceedings and competent performance of counsel discussed in the opinion of the court; the presumptions exist precisely to help appellate courts fill the gaps left by imperfect— yet sufficient—records, And a record reconstructed under rule 11(h), though “made to conform to the truth,” is not thereby rendered complete.
¶93 The reconstructed record at issue clearly falls somewhere betweén complete and wholly insufficient. Reading through it cannot fail to raise many questions about what may—or even must—have happened during voir dire that is not recounted. In fact, the record reconstruction does not even purport to be complete. The entirety of the reconstruction consists of the memories of two attorneys recounted roughly fifteen months after the trial, and the fog of time is apparent.
¶94 In their affidavits, both attorneys routinely reverse engineer their recollections from known facts. For instance, when recounting the voir dire of Juror One, trial counsel stated, “I do not remember any specific questions or answers, but [the trooper] would have assured us that he knew how to be fair, and that he could be fair, if selected as a juror.” (Emphasis added.) Thus, in his reconstruction effort defense counsel took a known fact—that Juror One was eventually seated on the jury—and worked backward to conclude that Juror One must have dispelled any concerns of bias during questioning, otherwise he would not have been empaneled. Although the circularity of the reasoning is obvious, this statement is taken as the truth under the terms of rule 11, and no one contests that point. But without Juror One’s actual answers and the questions that elicited them, the record is incomplete and calls for gap filling. Here, filling the gap required tracking through several layers of judicial presumption as explained in the court’s opinion—the very circumstance the presumptions seem designed to address. For these reasons I cannot agree with the concurrence’s conclusion that, if the certain acts were not made part of the reconstructed record, then those acts did not take place.
¶95 Second, I believe the concurrence’s analytical approach, though intended as a more efficient way to reach a just result in this case, bypasses some important principles. For instance, the concurrence draws on defense counsel’s prior professional transgressions to support a conclusion that he acted similarly in this case; counsel has performed ineffectively in the past, so it is likely that he did so again. Specifically, the concurrence suggests that a history of deficient performance overcomes the presumption of competency that would otherwise apply.
*459 ¶96 There is some appeal to such an approach because the appellate process plays an important role in protecting defendants from paying the high price of ineffective counsel. However great the temptation, though, I am concerned that the concurrence undermines an important principle that generally prevents character evidence from being used this way. I do not think it wise to apply what is essentially a character analysis based on prior occurrences to arrive at conclusions of ineffective performance under the circumstances of a particular case; rather, such an exercise seems better suited to the confines of an adversarial disciplinary process. I also have concerns about the future effects of suggesting that defendants can bolster their ineffective assistance of counsel claims on appeal by scouring case reporters (or other sources) for an attorney’s prior mistakes.
¶97 In addition, I am concerned about the use of extra-record facts in the discussion of Juror One. The concurrence takes apparent judicial notice of information far beyond the record on appeal. For instance, the concurrence collects cases in which Juror One, in his professional capacity as a highway trooper, made many traffic stops that state and federal appellate courts eventually ruled unconstitutional. The concurrence also cites newspaper and journal articles, the very definition of hearsay, documenting Juror One’s professional career. Although such extrinsic information may be relevant to the determinations of a trial court and counsel about whether a given juror is fair and impartial, I do not believe it is appropriate to the work of an appellate court for two reasons.
¶98 First, it is not clear that the broad judicial notice taken in the concurrence is appropriate at this stage of the process. This appeal focused on particular procedural problems in the trial below; it came to us on briefing, submitted by the parties, that relied on a single certified record. Enlarging the scope of the record sua sponte on appeal blurs the boundaries between trial courts and appellate courts and can work an unfairness on appellate parties and counsel. See, e.g., State v. Pliego, 1999 UT 8, ¶ 7, 974 P.2d 279 (“An appellate court’s review is limited to the evidence contained in the record on appeal.” (ellipsis, citation and internal quotation marks omitted)). If this court, with time and resources not available to district courts or trial counsel during voir dire, looks outside the record in this way in even a small number of cases, it could affect the confidence of parties and lower courts in the regularity and predictability of our process, a process that is for good reason constrained in its approach to appellate review.
¶99 Second, even if Juror One was of such local stature that he and his professional work history were or should have been known to the trial court and counsel to the extent the concurrence suggests, the ultimate consequence of the concurrence’s analysis is not simply that his background should have been taken into account (which it apparently was), but that Juror One would be categorically foreclosed from serving on a jury considering the sort of issues at play in this case. As a consequence, any judge that empaneled Juror One could be reversed for plain error and any decision by counsel to allow him as a juror would ipso facto amount to ineffective assistance. However, such a pronouncement from this court invades the purview of the voir dire process itself, which is designed to determine on a case-by-case basis if a given citizen can effectively fulfill his obligation to serve. I do not think it wise to suggest here that a certain history, however concerning it may be on its face, amounts to a per se disqualification for jury service that cannot be justifiably overcome in the circumstances of a particular ease. For these reasons, and with respect, I see this case as a much closer question than does the concurrence.