2024 UT App 61

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MARTIN ALEX SALAZAR-LOPEZ,
Appellant.

Opinion
No. 20230194-CA
Filed April 25, 2024

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 201908458

W. Andrew McCullough, Attorney for Appellant

Sean D. Reyes and Connor Nelson,
Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

LUTHY, Judge:

¶1     Martin Alex Salazar-Lopez pled guilty to multiple sexual offenses against a child, offenses he committed when he was still a minor. As part of Salazar-Lopez's sentence, the district court ordered a period of probation during which Salazar-Lopez must, among other things, comply with the sex offender Group A conditions created by the Utah Department of Corrections. Salazar-Lopez appeals that part of his sentence, asserting that because the court was statutorily prohibited from requiring him to register as a sex offender, it erred by ordering him to comply with the sex offender Group A conditions. We mostly disagree with Salazar-Lopez, and we affirm the district court's imposition of all but one of the Group A conditions as part of Salazar-Lopez's probation.

BACKGROUND

¶2　In 2020, when Salazar-Lopez was twenty-two years old, the State charged him with four counts of sodomy on a child, two counts of sexual abuse of a child, and two counts of lewdness involving a child, all based on conduct he had allegedly engaged in some years earlier—between January 1, 2015, and January 1, 2017—when Salazar-Lopez was occasionally babysitting a girl who was nine to eleven years old at the time. Salazar-Lopez ultimately agreed to plead guilty to one count of sodomy on a child and one count of sexual abuse of a child, and the State agreed to drop the remaining charges.

¶3　As part of the plea agreement, the date range for the charged conduct was changed slightly so that Salazar-Lopez would be pleading guilty only to conduct that occurred before his eighteenth birthday. The parties agreed that Salazar-Lopez would "not be subject to registration as a sex offender" due to his status as a minor at the time of the charged conduct. This understanding was reflective of a then-current law that provided, with limited exceptions, that "if an individual [was] convicted in district court of a qualifying sexual offense and, at the time of the offense, the individual was at least 14 years old, but under 18 years old," then "the individual [was] not, based on the conviction, subject to the registration requirements described in Title 77, Chapter 41, Sex and Kidnap Offender Registry." Utah Code § 76-3-209(3) (2022).[1]

---

1. Utah Code section 76-3-209 was later amended—effective May 3, 2023—to remove this specific provision. *See* Act of Feb. 9, 2023, ch. 123, § 1, 2023 Utah Laws 1341, 1341. At the same time, the legislature enacted Utah Code section 77-41-114, which now addresses registration requirements for persons convicted of sex crimes that they committed as minors. *See* Act of Feb. 9, 2023, ch. 123, § 15, 2023 Utah Laws 1341, 1352. The other Utah Code sections cited herein have not been amended in ways that impact this appeal, so we cite the current versions of those statutes.

The parties also agreed that no prison sentence would be imposed. However, the plea agreement stated, "There will be a presentence report, and the parties will be free to argue over a jail sentence. The State will request a psycho-sexual evaluation and treatment."

¶4  The district court thereafter sentenced Salazar-Lopez to sixty days in jail and 120 months of probation, and it imposed several requirements on Salazar-Lopez during his probation. One of those requirements was that Salazar-Lopez would have to "[a]bide by sex offender Group A conditions." The Utah Department of Corrections lists its Group A conditions as follows:

> a. THERAPY: Enter into, participate in and successfully complete sex offender therapy as determined by the treating facility, therapists and the Utah Department of Corrections.

> b. CURFEW: Enter into and successfully complete established progressive curfews or electronic monitoring where available, when required by Adult Probation and Parole.

> c. VICTIM CONTACT: Have no direct or indirect contact with victim(s) or victim's family without prior approval from Adult Probation and Parole.

> d. CHILDREN UNDER 18: Have no contact or association with children under the age of 18 without prior written approval of Adult Probation and Parole.

> e. NOT DATE: Not date persons with children residing at home under the age of 18 without prior written approval of Adult Probation and Parole.

> f. CHILDREN CONGREGATE: Not enter places or events where children congregate including, but not

limited to: schools, playgrounds, parks, arcades, parties, family functions, holiday festivities or any other place or function where children are present or reasonably expected to be present without prior written approval from Adult Probation and Parole or without the supervision of a responsible adult previously approved by Adult Probation and Parole.

g. SEX STIMULUS MATERIAL: Not have in my possession or under my control any material that acts as a sexual stimulus for my particular deviancy(s) including, but not limited to: computer programs, computer links, photographs, drawings, video tapes, audio tapes, magazines, books, literature, writings, etc. without the written approval from Adult Probation and Parole.

h. EXPLOIT MATERIAL: Not have in my possession or under my control any material that describes or depicts human nudity, the exploitation of children, consensual sex acts, non-consensual sex acts, sexual acts involving force or violence including, but not limited to: computer programs, computer links, photographs, drawings, video tapes, audio tapes, magazines, books, literature, writings, etc. without prior approval from Adult Probation and Parole.

i. ENTERTAIN/LURE: Not have in my possession or under my control any items or materials either designed for, or used to, entertain, lure or attract the attention of children under the age of 18 without prior written approval from Adult Probation and Parole.

j. POLYGRAPH: Submit to random polygraph examinations.

> k. EMPLOYMENT: Employment must be approved by Adult Probation and Parole.
>
> l. RESIDENCE: Residence and residence changes must be approved by Adult Probation and Parole.
>
> m. INTERSTATE COMPACT: Execute and adhere to the terms of the Interstate Compact Waiver and Agreement if probation or parole is served outside the state of Utah.
>
> n. REGISTRATION/DNA: Comply with requirements of the Utah Sex Offender Registration and DNA specimen requirements.

Utah Dep't of Corr., *Sex Offender Group A Conditions*, https://corrections.utah.gov/wp-content/uploads/2022/03/Microsoft-Word-Program-A-03-14-22.pdf [https://perma.cc/W4LN-XRL9].

¶5 Salazar-Lopez objected to the imposition of the Group A conditions and moved to amend his sentence. He objected generally to the imposition of the Group A conditions on the basis that by statute he was not required to register as a sex offender, arguing:

> It is obvious that [sex offender registration] requirements do not apply to [Salazar-Lopez] because he cannot be, and will not be, required to comply with those requirements. It is only common sense that he is also not required to comply with the other requirements directed at those who are registered sex offenders and who therefore are subject to these rules.

Salazar-Lopez also brought to the court's attention the specific impact of some of the Group A conditions on his family, saying:

[Group A conditions] really have no relevance to [Salazar-Lopez] and his situation. The [c]ourt was well aware that [Salazar-Lopez] is now 24 years old, and that he is married and has a young son. The [c]ourt made no comment at his sentencing on his living arrangements, which obviously includes living with his wife and son.

¶6      In response, the district court amended Salazar-Lopez's sentence to allow him to have contact with his own son, but it did not remove the requirement that Salazar-Lopez otherwise abide by the Group A conditions while on probation.

¶7      Salazar-Lopez timely appealed. He also moved for a stay pending appeal of the requirement that he abide by the Group A conditions, and the district court granted that request.

ISSUE AND STANDARD OF REVIEW

¶8      Salazar-Lopez contends that the district court erred by imposing the Utah Department of Corrections' sex offender Group A conditions as part of his probation despite the fact that, due to his age at the time of the crimes, he "is not subject to registration as a [s]ex [o]ffender" and "is not required to abide by the conditions of that registration." The parties disagree as to the standard of review we should apply in addressing Salazar-Lopez's argument. The State argues that the district court's sentence should not be overturned absent an abuse of discretion, while Salazar-Lopez contends that we are to review the primary issue before us for correctness.

¶9      The State is correct that, "[g]enerally, we will reverse a trial court's sentencing decision only if it is an abuse of the judge's discretion." *State v. Helms*, 2002 UT 12, ¶ 8, 40 P.3d 626. However, "a trial court abuses its discretion if its decision is premised on flawed legal conclusions." *State v. Boyer*, 2020 UT App 23, ¶ 18,

460 P.3d 569 (cleaned up), *cert. denied*, 466 P.3d 1075 (Utah 2020). And that is the nature of the argument Salazar-Lopez makes here—that the district court reached a flawed legal conclusion when it decided that it could impose the sex offender Group A conditions as part of Salazar-Lopez's probation even though the court was statutorily prohibited from requiring Salazar-Lopez to register as a sex offender. Because "we review the district court's legal conclusions for correctness," we afford no deference to its legal conclusion regarding its ability to impose Group A conditions as part of Salazar-Lopez's probation. *State v. Lusk*, 2001 UT 102, ¶ 10, 37 P.3d 1103. The correct interpretation of the applicable statute is likewise a question of law that we review for correctness. *See State v. Larsen*, 865 P.2d 1355, 1357 (Utah 1993).[2]

---

2. Because the State mistook Salazar-Lopez's argument as an assertion that the district court abused its discretion by imposing certain probation conditions under the facts of this case, it argues that a transcript of the sentencing hearing, which Salazar-Lopez initially failed to provide, is "vital" to show "how the court weighed relevant factors when deciding to impose Group A conditions." In response, Salazar-Lopez submitted, as an addendum to his reply brief, a sentencing hearing transcript, which the State moved to strike. Salazar-Lopez then filed a motion to supplement the record with the transcript, which motion the State opposed. Record supplementation generally "may not be done by simply including the omitted material in [a] party's addendum." *State v. Pliego*, 1999 UT 8, ¶ 7, 974 P.2d 279. Moreover, record supplementation is appropriate only when "anything *material* is omitted." *Id.* (emphasis added). Our review of the legal question Salazar-Lopez raises—namely, whether as a matter of law the district court could impose the sex offender Group A conditions as part of Salazar-Lopez's probation—is not impacted by the availability of the sentencing hearing transcript. The transcript is therefore not material to this appeal. For this reason,

(continued…)

ANALYSIS

¶10    Salazar-Lopez contends that because he is statutorily exempt from the requirement to register as a sex offender, it was error, as a violation of statute, for the district court to impose the Department of Corrections' sex offender Group A conditions as part of his probation. In other words, he asserts that because he was not required to register as a sex offender, it was "common sense" that he cannot be "required to comply with the other requirements directed at those who are registered sex offenders."

¶11    Salazar-Lopez's argument rests on Utah Code section 76-3-209, which, as it existed at the time of sentencing, provided that individuals convicted in district court of certain qualifying sexual offenses committed when they were not yet eighteen years old were "not . . . subject to the registration requirements described in Title 77, Chapter 41." Utah Code § 76-3-209(3) (2022).[3] Salazar-Lopez was sixteen or seventeen years old at the time of the charged conduct, and his convictions are for qualifying sexual offenses, *see id.* § 76-3-209(1) (2023) (defining a "qualifying sexual offense" as including "an offense described in Chapter 5, Part 4, Sexual Offenses"); *id.* § 76-5-403.1 (sodomy on a child); *id.* § 76-5-404.1 (sexual abuse of a child). Thus, this provision is applicable to him, and he is therefore not subject to the sex offender registration requirements of Title 77, Chapter 41. This appeal thus turns on a proper understanding of what are and are not the sex offender registration requirements of Title 77, Chapter 41.

¶12    Title 77, Chapter 41 defines the term "[r]egister" as meaning "to comply with the requirements *of this chapter* and

---

we grant the State's motion to strike and deny Salazar-Lopez's motion to supplement the record.

3. This provision contained certain exceptions, which are not relevant to this case. *See* Utah Code § 76-3-209(3), (4) (2022).

administrative rules of the department *made under this chapter*." *Id.* § 77-41-102(15) (emphasis added). According to this definition, the sex offender registration requirements of Title 77, Chapter 41 include only (1) the requirements imposed by Title 77, Chapter 41 itself and (2) any requirements imposed by rules promulgated by the Department of Corrections under the rulemaking authority granted in Title 77, Chapter 41. *See id.* And we do not see that the Group A conditions generally fall into either of these categories. They generally are not requirements imposed by that chapter of the code, and they are not requirements imposed by any administrative rule promulgated by the Department of Corrections under authority granted in that chapter; indeed, Salazar-Lopez points to no link between the provisions in Title 77, Chapter 41 and the existence of the Group A conditions. Thus, section 76-3-209 generally did not prohibit the district court from requiring Salazar-Lopez to abide by Group A conditions.

¶13   Salazar-Lopez apparently presumes that because he is not "subject to the registration requirements described in Title 77, Chapter 41," *see id.* § 76-3-209(3)(a) (2022), he is also not subject to any other restriction that might apply to sex offenders. But that presumption is not supported by the statutory language, which by its terms provides only that certain specific registration requirements do not apply to a person in Salazar-Lopez's position. *See id.* Moreover, even if we were to agree with his assertion that through section 76-3-209 "the legislature acknowledged that a young person should not be branded as a sex criminal and scarred for life," requiring him to abide by Group A conditions for the limited period of his probation does no such thing.

¶14   The district court is granted considerable latitude in crafting conditions of probation and may impose "terms and conditions the court considers appropriate to ensure public safety or increase a defendant's likelihood of success on probation." *Id.* § 77-18-105(6)(a)(ix) (2023). And should such terms overlap with

conditions frequently imposed on registered sex offenders, we see no legal error in their imposition, so long as they are not "registration requirements described in Title 77, Chapter 41," *id.* § 76-3-209(3)(a) (2022).[4]

¶15 This leads us to the one aspect of the district court's order that we determine requires reversal: condition n of the Group A conditions (Condition N), which requires an individual to "[c]omply with requirements of the Utah Sex Offender Registration and DNA specimen requirements." Utah Dep't of Corr., *Sex Offender Group A Conditions*, https://corrections.utah.gov/wp-content/uploads/2022/03/Microsoft-Word-Program-A-03-14-22.pdf [https://perma.cc/W4LN-XRL9]. While the Group A conditions generally do not amount to "registration requirements described in Title 77, Chapter 41," *see* Utah Code § 76-3-209(3)(a)

---

4. Salazar-Lopez takes issue with the State presenting arguments on appeal where it failed to file any opposition to several of his motions below. He suggests that by its silence on this front, the State essentially waived its appellate arguments: "If the [d]efendant, upon appeal, has a duty to show the appellate court that he presented his case fully to the trial court, does not the State have some duty to show that it provided reasons to the district court to support the trial court's ruling?" The answer to this question is no. While Salazar-Lopez is correct that "[a]s a general rule, claims not raised before the trial court may not be raised on appeal," *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346, the State has raised no issues on appeal. Rather, Salazar-Lopez, as the appellant, has raised issues for our review, and the State, as the appellee, is free to make arguments in response to those issues—even if those arguments were not advanced below. *See Gressman v. State*, 2013 UT 63, ¶ 45, 323 P.3d 998 ("*Issues* must be preserved, not arguments for or against a particular ruling on an issue raised below."); *Cochegrus v. Herriman City*, 2020 UT 14, ¶ 36, 462 P.3d 357 ("It is within our discretion to affirm a judgment on an alternative ground if it is apparent in the record." (cleaned up)).

(2022), the specific requirements listed within Condition N *are* such requirements, *see id.* § 77-41-105 (2023) (setting forth sex offender registration requirements); *id.* § 77-41-105(7)(g) (requiring sex offenders to provide "a DNA specimen" to the Department of Corrections "or the registering entity"). Thus, Salazar-Lopez is not subject to the registration requirement or the requirement to provide a DNA specimen, and those requirements may not be a part of the conditions of his probation. We therefore reverse the district court's inclusion of Condition N as part of Salazar-Lopez's probation conditions.

## CONCLUSION

¶16 Because Condition N of the sex offender Group A conditions mandates compliance with certain registration requirements of Title 77, Chapter 41, and because Salazar-Lopez is exempt from such compliance, we reverse the district court's imposition of Condition N as a condition of his probation. We otherwise affirm the court's imposition of Group A conditions as part of his probation, as they are not registration requirements of Title 77, Chapter 41 of the Utah Code.

———